MICHAEL BRADY

v.

THE CARTERET REALTY COMPANY and WILLIAM CARMAN,
sheriff of Middlesex county.

[Filed March 17th, 1904.]

1. Under *Gen. Stat. p. 2980* § 7, providing that sheriff's deeds on exe-
cution shall transfer and vest in the purchaser as good an estate to the
premises therein mentioned as could be given by the person against whom
the execution was issued, and as fully as if such person had himself sold
the lands and delivered the deed, a sheriff, in a sale of real estate on
execution, acts as an involuntary agent of the debtor in effecting a con-
veyance of the latter's land, and his deed passes the same title which a
deed of bargain and sale executed by the debtor would pass.

2. Where a creditor stands by during an execution sale of 'his debtor's
property, and by his silence conceals his own hostile title, his own title,
as well as that of the debtor, will pass by estoppel to the purchaser under
the sheriff's deed.

3. Equity will enjoin the purchaser of a judgment, who claims a title
to the judgment debtor's property hostile to that of the judgment debtor,
from selling such property on execution, and announcing at the sale that
the judgment debtor has no title in the land, but that he (the owner of
the judgment) in fact owns the estate which the sheriff is offering for
sale, and that the purchaser will get nothing of value by the sheriff's
deed.

On motion for injunction on bill and affidavits.

*Mr. Ephraim Cutter* and *Mr. Willard P. Voorhees,* for the
motion.

*Mr. Gilbert Collins, contra.*

STEVENSON, V. C.

The bill is filed under the statute to quiet the title of the
complainant against the adverse claims of the defendant, the
Carteret Realty Company. Pending the litigation to determine

the question of title an injunction is prayed for to restrain the defendant, the sheriff of Middlesex county, from selling the land in dispute under an execution upon a judgment owned by the Carteret Realty Company.

The only question on this motion is whether such an injunction should be issued.

The leading facts, which must be gathered from the bill which is sworn to and the annexed affidavits, there being no answer or answering affidavits on behalf of the defendants, are as follows:

In April, 1881, the complainant took possession as owner of the land in question, being a tract of eleven acres near the growing village of Carteret, in Middlesex county. The tract is now worth about $11,000. Prior to April, 1881, the tract had been occupied by one Parsons, who, however, admitted that his title was defective, or that he had no good title to the same. Parsons made a bargain with the complainant to give him the tract in consideration of certain services that complainant was to render with reference to the sale of other property. Complainant rendered the services and took possession, and ever since has remained in open, continuous possession, adverse to all other parties, including Parsons and his heirs and assigns.

The defendant the Carteret Realty Company recently "claims in some way to have purchased the interest" of Parsons, but the complainant charges that such purchase was with full knowledge of his claim of title. The first assertion of title on behalf of the Carteret Realty Company, or those under whom the said company makes its claim, was made after the expiration of twenty years from April, 1881, at a time when the complainant's title had become an absolute fee by adverse possession.

In May, 1903, the Carteret Realty Company commenced an action of ejectment in the supreme court against the complainant for the recovery of the possession of the land. In September, 1903, the Carteret Realty Company made default at the Middlesex circuit court, "and judgment of non-suit was entered in said action in said supreme court on the 4th day of November last." On or about September 23d, 1903, the

Brady *v.* Carteret Realty Co.

Carteret Realty Company took an assignment of a judgment which had been recovered against the complainant May 14th, 1888, for $1,500 debt and $183.24 damages and costs. On the same day (September 23d, 1903), the Carteret Realty Company "caused an execution to be issued to the sheriff of the county of Middlesex on the said judgment," under which a levy was made on the land and the same was advertised for sale. The complainant admits that "the whole of said judgment is due and unpaid, with interest from the date thereof," but alleges that the Carteret Realty Company paid only about $300 for the same.

The sheriff's sale came on, according to the advertisement, on November 25th, 1903, and then, on application of the complainant, was adjourned, and subsequently was further stayed by order of this court in this cause. At the above-mentioned appointed time for the sale, the attorney of the Carteret Realty Company, who was also a director thereof, .

"stated to the sheriff and those present, in opposing an adjournment, that the complainant had no title to said tract of land and was not the owner thereof, and that an adjournment should not be granted because his interest in said tract, by possession, was not worth anything."

This attorney and director has also declared to the complainant that he intended

"to give notice of the same thing on the day of the sale of said lands under said execution, and that no one would give anything for the said tract of land at such sale."

The complainant, in his affidavit attached to the bill, states that the attorney of the Carteret Realty Company, in opposing the adjournment, stated that the complainant

"had no title to said tract of land and was not the owner thereof, * * * and that the Carteret Realty Company was the owner of said tract."

An affidavit of the complainant's attorney states that the attorney of the Carteret Realty Company above referred to stated, in his presence,

"that the object of said company in taking an assignment of said judgment and advertising said lands for sale was to obtain possession of said lands, and that the directors of said company thought that it would be easier to obtain possession by a sale under execution on said judgment than by bringing a new action of ejectment, * * * and that he intended on the day to which the sale of said tract had been adjourned to again announce that the complainant had no title whatever to said tract and did not own it, but was a mere tenant, and to state that the Carteret Realty Company was the true owner thereof."

Although there is some discrepancy in these various statements, the meaning, I think, is plain. The Carteret Realty Company proposes, at the sheriff's sale of this tract of land, to deny that its execution debtor has any estate whatever in the land —that a purchaser, therefore, will get nothing of value by the sheriff's deed, and that it (the Carteret Realty Company) in fact owns the very estate which it has caused the sheriff to offer for sale under the execution.

I do not think that under the allegations of the bill and affidavits it can be properly inferred that the Carteret Realty Company proposes to stand by and allow the sheriff to offer for sale any legal interest or estate in this tract of land which it (the Carteret Realty Company) will not at such sale openly claim to own. In brief, this company proposes to have the sheriff, under this execution against the complainant, offer in form an estate of the complainant for sale, the existence of which it will deny, while it claims to be the owner of this very estate itself. The question is whether equity will permit a judgment creditor to hold this sort of an execution sale.

In order to deal intelligently with the situation, I think we must regard the Carteret Realty Company as occupying precisely the same position as if it had recovered the judgment against the complainant in its own name and had issued the execution thereon. It owns the judgment; it is to receive all that may be collected upon it, and it has caused the writ of execution to be issued and the sale of this tract of land to be brought on thereunder.

In solving the problem which the case presents, the motives of the Carteret Realty Company, and any hardship or misfortune

Brady *v.* Carteret Realty Co.

from which the complainant may suffer, must be excluded from consideration, provided all that the Carteret Realty Company is doing is to enforce its legal and equitable rights. *Davis* v. *Flagg, 8 Stew. Eq. 491.*

It may also be conceded that if the original owners of the judgment who recovered the same had, for the purpose of collecting the amount thereof, levied upon the estate of the complainant in this tract of land, he (the complainant) would not have been able to stay the execution sale by an injunction out of this court upon the plea that by such stay his title could be made good, and thus a more advantageous execution sale could be held, which would fully pay the judgment creditors' claim and leave a substantial balance for himself. It may be questioned whether any equitable principle has so far been evolved under which this court could step in and stay such an execution sale in order that it might be held subsequently to greater advantage. The execution creditor, generally, has a right to sell what the execution debtor claims he holds. Delay may improve the value of the thing so held and levied upon, but, on the contrary, delay may destroy its value. The execution creditor often desires to take advantage of the willingness of some one to purchase perhaps a doubtful title before such doubt can be solved against such title. It is easy to imagine cases where an execution debtor, whose lands are apparently encumbered with a large mortgage, would be greatly the gainer if he could hold off the execution sale until the cloud of the encumbrance might be removed. By staying the sale, however, the result might be that the encumbrance would be declared valid and purchasers who would have paid something for the benefit of the execution creditor would no longer be willing to come forward as bidders.

We must assume that the motives of the Carteret Realty Company in acquiring this judgment and forcing on this execution sale, although perhaps unfair and censurable in the forum of morals, and even oppressive toward the complainant, cannot be inquired into unless it is threatening to violate some equitable right of the complainant by holding this sheriff's sale under

the conditions which have been described. *Davis* v. *Flagg, supra.*

It may be that such a sheriff's sale as the Carteret Realty Company proposes to hold will not in fact be held for the purpose of accomplishing any of the objects which our law has in view in subjecting the lands of a man to public sale for the payment of his debts, but if this company has a legal and equitable right to bring on such a sheriff's sale the only remedy of the execution debtor is to pay the amount which he admits is due and thus defeat the actual purpose of his pursuing creditor.

After some hesitation I have reached the conclusion, in the absence of any satisfactory authorities which have been cited or which I have been able to find, that it is not equitable for any execution creditor to expose real or personal property for sale under his execution when at the time of the sale he stands by and openly declares that nothing is being sold; that the execution debtor has no property in the thing offered for sale which can pass by the sheriff's deed or bill of sale; that, on the contrary, he (the execution creditor) holds, and will hold after the sheriff's sale, the entire property in the thing so offered for sale. This proposition may require modification and its application in this particular case is modified by the fact that the execution creditor has expressly avoided testing the two inconsistent titles while the execution debtor is standing in court with a bill filed for that purpose.

If the complainant's title as the result of this suit should prevail against the title of the Carteret Realty Company, then the entire judgment which the company now holds will be readily collected. If, however, the title of the Carteret Realty Company finally prevails, then it will have lost the opportunity of securing a possible payment, or partial payment, of its judgment by sale of something the existence of which it denies at the sale, and the existence of which it subsequently and finally disproved.

In a sale of real estate the sheriff acts as the involuntary agent of the execution debtor in effecting a conveyance of the

debtor's land. The sheriff's deed passes the same title which a deed of bargain and sale executed by the judgment debtor would pass. *Gen. Stat. p. 2980 § 7; P. L. of 1799 p. 386 § 12; Pat. L. p. 371; 1 Neville p. 280 § 6; Hackensack Savings Bank v. Morse, 1 Dick. Ch. Rep. 161; S. C. on appeal, 2 Dick. Ch. Rep. 279; Voorhis v. Westervelt, 16 Stew. Eq. 642, 646.*

The execution creditor, by his proceedings at law, forces this sort of an involuntary conveyance to be made by the debtor for his (the creditor's) benefit. What right in equity ought to be recognized in any creditor to compel his debtor to make a conveyance of property for the payment of his debt while he (the creditor) warns all persons not to buy by declaring that the property offered to be conveyed does not belong to the debtor, but belongs to him? Such conduct seems to exhibit an instance of blowing hot and cold, which ought not to be tolerated if it can be safely avoided.

If the creditor in such case stands by and by his silence conceals his own hostile title, then under the familiar principle of the law of estoppel his own title, as well as that of the debtor, may pass by the sheriff's deed. It was urged in this case that there was nothing inequitable in the announcement which the Carteret Realty Company made and proposes to make at the sheriff's sale, because if they concealed their title they would be estopped. This may be conceded to be entirely true. The inequity does not consist in the announcement, but in the holding of a sale at which such an announcement is to be made.

This is a case, I think, where the relation of the party acquiring a judgment by assignment to the property levied upon under it is such that in respect of the sale of that property the assignee is encumbered with a limitation which did not rest upon the assignor. There are many situations in which if a man sees fit to purchase a judgment he cannot enforce it against the judgment debtor or against the particular property of the judgment debtor, while the original holder of the judgment in respect of those matters would have been entirely free to act as he saw fit.

A somewhat analogous situation, where a judgment creditor

is subject to equitable control in the sale of a particular piece of property for the satisfaction of his judgment, is presented in the case of a holder of a bond and mortgage who recovers a judgment upon his bond and then undertakes to levy upon the mortgaged land and sell the same for the satisfaction of the judgment. The limitations upon the mortgagee in respect of the collection of his judgment by sale of the mortgaged premises have been the subject of considerable variance of judicial opinion. *3 Pom. Eq. Jur.* § *1204 n; 2 Jones Mort.* (*4th ed.*) § *1229; Lydecker* v. *Bogert, 11 Stew. Eq. 136; Lanahan* v. *Lawton, 5 Dick. Ch. Rep. 276, 281.*

There is a general consensus of opinion that this situation is one which calls for equitable control wherever the judgment debtor—the mortgagor and obligor of the bond—comes into a court of equity and asks for relief.

The case of *Havens* v. *Thompson, 8 C. E. Gr. 321,* is in some respects similar to the one now before this court. The bill was filed under the statute to quiet title. Two of the defendants, as creditors of a third defendant, had attached the title of the latter in certain lands, which title the complainant sought by his bill to have declared void, and an injunction restraining these attaching creditors from selling the disputed title pending the suit was applied for. The chancellor retained the preliminary injunction until the final hearing, stating that the delay could not "be of serious injury to the defendants." On final hearing, however, it turned out that the interest which the attaching creditors desired to sell was non-existent. *11 C. E. Gr. 383.* The result was that the attaching creditors were deprived of the opportunity of finding a purchaser who might be willing to bid something for the possible interest of the defendant in attachment, which subsequently was proved to be of no value. If the injunction was properly held in that case, it seems to me that it should be held in this case. The attaching creditors were not attempting to hold a sale of an interest in lands the existence of which they denied; they were seeking in good faith to sell the interest of the defendant in attachment —such interest as he apparently had or claimed to have, and

they stood in a position to commend that interest. In the present case the execution creditor (the Carteret Realty Company) not only is not in a position to commend the sale, or at least let the thing which they offer for sale commend itself while they remain silent, but they slander for their own protection—are obliged to slander the very title which in form they are procuring to be sold for their benefit. To restrain such a sale, it seems to me, cannot deprive a creditor of any advantage which an honest man ought to claim. Such a sale would, I think, be a perversion of the objects of the statute which subjects land to the payment of the owner's debts, not because of any bad motives or ulterior purposes of the judgment creditor in pursuing his strict legal rights, but because the sale itself is held under conditions which make it not a *bona fide* proceeding to convert the judgment debtor's property into as much money as possible for the payment of the judgment. It is hard to see how a creditor can in good faith, in accordance with the meaning and spirit of the statute, force a sale of his debtor's property for the purpose of collecting his debt, when he proposes to endeavor to persuade all possible purchasers that the sale is a mere form and that in fact nothing will be sold. Even if the Carteret Realty Company had not intentionally placed itself in the position which it occupies, it seems to me that the situation is one which justifies equitable intervention.

It is no answer to say that the remedy of the judgment debtor is to pay his debt; his complaint is that the legal proceedings for the collection of the debt are being conducted in violation of his equitable rights.

I have not inquired whether if this sale should go on the Carteret Realty Company, in spite of their announcement, would be estopped to set up a title in themselves inconsistent with the title which they caused to be sold under execution for their benefit. If the Carteret Realty Company are willing to bind themselves to have the whole estate in fee which they have caused to be levied upon as a thing belonging to the complainant sold at this sheriff's sale, the complainant, of course, would have no well founded objection to make. The Carteret Realty Com-

pany do not offer to hold such a sale, nor is it reasonable to suppose that they would make such offer.

On the other hand, the complainant is in a position to make and to be compelled to make every possible concession necessary to preserve the legal and equitable rights of the Carteret Realty Company. This suit now pending in this court can be forced to a speedy trial. The Carteret Realty Company has the right, under the statute, to a trial by jury. The complainant may be compelled to consent to a reinstatement of the action of ejectment if the Carteret Realty Company so desire, or may be obliged to accept service of process in a new action of ejectment and take all reasonable steps to speed the trial of the same.

The terms under which the injunction restraining the sheriff's sale will be issued may be determined upon the settlement of the order.