AGNES H. LIPPINCOTT, appellant,

*v.*

SAMUEL C. SMITH et ux. et al., respondents.

[Argued June 26th and 27th, 1905. Decided June 18th, 1906.]

1. By force of the ninth section of "An act relative to sales of land under a public statute, or by virtue of any judicial proceedings" (*3 Gen. Stat. p. 2981*), a judgment recovered against the heir, upon which execution has been issued and a levy made thereunder, becomes a lien upon lands descended, and upon which the levy has been made, prior to that of a judgment recovered against the ancestor upon which execution has been issued but under which no levy has been made; and the holder of the junior judgment is entitled to priority of payment out of the proceeds of sale of such lands, whether the sale be made under an execution at law or by virtue of a decree in chancery.

2. *Clement* v. *Kaighn, 15 N. J. Eq. (2 McCart.) 47*, followed.

3. *Bogert* v. *Lydecker, 45 N. J. Law (16 Vr.) 315*, approved.

On appeal of Daniel V. Summerill, Jr., from a decree in chancery advised by Vice-Chancellor Grey, whose opinion is reported *ante p. 243*.

*Mr. Samuel H. Richards,* for the appellant.

*Mr. Ephraim Tomlinson* and *Mr. Peter V. Voorhees,* for the respondents.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

This is a bill for partition. The lands were not susceptible of an actual division and were therefore sold. The undivided interest of Joseph A. Burrough, one of the tenants in common, was subject to the lien of two judgments, one held by Rachel Burrough and the other by Daniel V. Summerill, Jr., each of whom claim to be entitled to priority of payment out of Joseph A. Burrough's share of the proceeds of sale. His share of the proceeds, being insufficient to satisfy both judgments, is held by the court of chancery to await the determination of this question of priority.

The facts which gave rise to the controversy are as follows: Joseph A. Burrough was the son and only heir-at-law of Mary A. Burrough, and inherited from her the undivided interest which he held in the lands sought to be partitioned. The judgment of Rachel Burrough was recovered against Mary A. Burrough during the latter's lifetime. Execution was issued upon this judgment, but no levy was made thereunder. The judgment of Summerill was recovered against Joseph A. Burrough after the death of his mother. Upon this judgment execution was also issued, and a levy was made under it upon the interest of Joseph A. Burrough in the lands sold under the partition proceedings.

The vice-chancellor before whom the case came on to be heard considered that, under our statutes, the creditor of an heir could not, by entry of judgment and levy upon lands descended, acquire a right of payment from the ancestor's lands in priority to a judgment recovered against the ancestor, and which was a lien upon the land when the heir took his estate. He therefore advised that the Rachel Burrough judgment was entitled

to be first paid out of the proceeds of sale.  From the decree entered in accordance with that advice this appeal is taken.

The solution of the question which this controversy raises depends upon the true construction of the ninth section of "An act relative to sales of land under a public statute or by virtue of any judicial proceedings." *3 Gen. Stat. p. 2981.*  That section reads as follows:

"WHEREAS, other judgments and recognizances besides those, or some of those, by virtue whereof the sale aforesaid [*i. e.,* the sale of land by a sheriff or other officer by virtue of a writ of execution] was made, might affect the lands, tenements, hereditaments and real estate so sold, if no provision be made to remedy the same; and *whereas,* the persons who have not taken or will not take out executions upon their judgments or recognizances ought not to hinder or prevent such as do take out executions from having the proper effect and fruits thereof; therefore be it enacted that the purchaser, his heirs and assigns, shall hold the lands, tenements, hereditaments and real estate by him or her purchased as aforesaid, free and clear of all other judgments and recognizances whatsoever, on or by virtue of which no execution has been taken out and executed on the lands, tenements, hereditaments and real estate so purchased."

The learned vice-chancellor who advised the decree appealed from was of opinion that this statutory provision dealt only with judgments recovered against the same person, and had no application in the case of judgments one of which was recovered against the ancestor and the other against the heir.  But this construction of the statute seems to us to be too narrow. The evil which the legislature sought to remedy is pointed out by the preamble, and that is the hindering or preventing of judgment creditors, who take out executions, from having the proper effect and fruits of their diligence by the holders of prior judgments who refuse or neglect to enforce them by execution and sale.  The statute deals with the *rem*—the judgment as a lien upon the land; it does not regard the party against whom it was recovered.  The situation to be dealt with is the same whether the prior judgment, which the holder refuses or neglects to enforce against the land, was recovered against a present or former owner of the land.  The judgment is equally a hindrance to the diligent creditor—equally prevents him from having the proper effect and fruits of his diligence—no matter

against whom it was recovered, if it be a lien upon the land he seeks to have sold. The remedy given by the statute is as broad as the mischief which it was intended to correct. The sale made under the execution issued on the junior judgment conveys a title to the purchaser, not only free and clear of all other judgments which have been recovered against the defendant in the junior judgment, but "free and clear of all other judgments *whatsoever.*" A construction of the statute which limits its operation to senior and junior judgments recovered against the same person is not required by its language; it renders it, to some extent, ineffective in remedying the evil against which it is directed; it disregards the express declaration of the statute itself as to its scope.

It is suggested, on behalf of the respondents, that the statutory provision under consideration is limited in its application to sales made under executions issued upon junior judgments; that it deals primarily with the title which a purchaser at such a sale shall acquire, and with the priorities of judgment creditors only as an incident to the purchase. The suggestion is not a novel one, although the point raised has never been directly passed upon by this court. It was necessarily involved in the decision of *Clement* v. *Kaighn, 15 N. J. Eq. (2 McCart.) 47,* a case decided nearly half a century ago in the court of chancery, and was thus dealt with by Chancellor Green in his opinion: "The statute, in terms, relates merely to the title which a purchaser by virtue of a sheriff's sale under an execution at law shall acquire. It declares that the purchaser under a *sale* by virtue of an execution issued upon a junior judgment shall hold the land clear of all judgments upon which no execution has been taken out and executed on said land. In effect, that gives to the junior judgment by virtue of which the *land is sold* priority over the senior judgment upon which no execution hath been sued out and executed upon the land. But the design of the statute is to give to the plaintiff in the junior judgment, upon which execution is first sued out, the proper effect and fruits thereof. The operation of the statute cannot, therefore, be limited to the case of a sale under the junior judgment, where no execution hath been sued out upon the senior

judgment and levied upon the land; for, if that were so, it would enable the plaintiff in the prior judgment to sue out and levy his execution upon such judgment after the levy under the execution upon the junior judgment, and thus defeat the express object of the statute by preventing the plaintiff in the junior execution from obtaining the effect and fruit thereof. To give effect, therefore, to the statute it is necessary to hold that the plaintiff in the junior judgment, by suing out and levying the first execution upon the land, acquires a priority of lien which cannot be affected by any execution subsequently issued, nor by any mode in which the land may be sold. The issue of the execution upon the junior judgment and its delivery, duly recorded, to the sheriff [and the levy thereunder upon the land] destroys the priority which was enjoyed by the older judgment and transfers it to the junior judgment. It reverses the priority of the encumbrances, no matter in what mode the land may be sold."

Speaking for myself, I concur in the reasoning of the distinguished jurist who delivered this opinion, and consider that he rightly decided that this statutory provision "reverses the priority of the encumbrances, no matter in what mode the land may be sold." But even if the logic of his argument was of doubtful soundness, the construction which he then put upon the statute ought not now to be departed from. Ever since its promulgation, in 1862, the decision has been followed by the court of chancery whenever the principle established by it was relevant to the case then under consideration. In *Lovejoy* v. *Lovejoy, 31 N. J. Eq. (4 Stew.) 55; Andrus* v. *Burke, 61 N. J. Eq. (16 Dick.) 297,* and *Meeker* v. *Warren, 66 N. J. Eq. (21 Dick.) 146,* the facts, in their legal aspect, were identical with those of *Clement* v. *Kaighn,* and the decision in each of them was rested solely upon the construction put upon the statute by Chancellor Green. In *Bogert* v. *Lydecker, 45 N. J. Law (16 Vr.) 315,* the supreme court expressly approved the conclusion reached in that case. In *Hoag* v. *Sayre, 33 N. J. Eq. (6 Stew.) 552,* this court followed it, so far as it was applicable to the facts of the case then in hand. So far as we are aware, it has been universally accepted by the members of the profes-

sion as a sound exposition of the statute in their dealings with questions which involved its application. Originally it may not have been of grave consequence whether the statutory provision received the broad construction given to it in *Clement* v. *Kaighn* or the narrower one suggested by counsel for the respondent. But, granting this, it certainly is important that the construction then adopted, and so universally followed during so long a period, should be firmly adhered to. As was said by Chief-Justice Beasley, in *Merritt* ads. *Day, 38 N. J. Law (9 Vr.) 36:* "The business of life rapidly accommodates itself to any rule that is judicially promulged, the reason being that it is confidently believed that such rule will not be arbitrarily changed, and the highly practical maxim, *stare decisis,* is a recognition of the palpable injustice of disappointing such legitimate expectations. The crisis, therefore, does not often occur which justifies the overthrow, by judicial action, of an inveterate rule of law." The rule of law established by this case should not be disavowed after so conspicuous and protracted an existence, or even considered to be liable to challenge.

It will have been perceived that in *Clement* v. *Kaighn* the court dealt with a case in which no execution had been issued upon the senior judgment, while in the present case an execution has been sued out upon the senior judgment but no levy had been made thereunder. But this variance is immaterial in determining the respective rights of the present parties. In *Bogert* v. *Lydecker,* above referred to, the same situation was presented as exists in this case. It was there pointed out that one of the purposes of the statute was "to prevent the continuance of the lien of a prior *unlevied* judgment," and the conclusion reached was that the lien of a prior judgment is supplanted by the lien of a junior judgment on which an execution is sued out, delivered to the sheriff and levied before the delivery of *and levy made on* an execution sued out on the prior judgment. The soundness of this conclusion seems to us to be indisputable, and for the reasons stated in the opinion in the case.

The judgment of the appellant, Summerill, is entitled to priority of payment out of the proceeds of the sale of the share of Joseph A. Burrough in the lands sought to be partitioned, and the decree under review must be reversed.

*For affirmance*—SWAYZE, VROOM—2.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, FORT, GARRETSON, PITNEY, REED, BOGERT, VREDENBURGH, GREEN, GRAY —10.