72 N.J. Super. 564 (1962)
178 A.2d 649
BENJAMIN SILVER, PLAINTIFF,
v.
THOMAS WILLIAMS, SR., ET AL., DEFENDANTS, AND PHILIP MITCHELL, ASSIGNEE OF G & S DUO HOLDING CO., DEFENDANT-APPELLANT, AND STANDARD DISCOUNT CORP., ASSIGNEE OF ALLEN F. ROULHAC AND ELTON E. HILL, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 26, 1962.
Decided March 7, 1962.
*566 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. Philip Mitchell argued the cause for appellant, pro se.
Mr. Herman J. Ziegler argued the cause for respondents.
The opinion of the court was delivered by CONFORD, S.J.A.D.
The issue here is the narrow one of the respective priorities of certain subsequent encumbrances in surplus moneys realized on a sheriff's sale upon foreclosure of a first mortgage. The sole parties on this appeal are the respondent Standard Discount Corp. ("Standard" hereinafter), assignee of two judgments recovered December 6, 1954 against the then owner of the property, and Philip Mitchell, assignee of a note and recorded mortgage on the property executed July 14, 1960, judgment having been entered on the note January 24, 1961, followed by issuance of execution thereon February 15, 1961 and consequent levy on the right, title and interest of the then owner of the property April 26, 1961.
The foreclosure action was instituted January 12, 1961 and lis pendens filed January 19, 1961. The final judgment in the foreclosure was entered July 25, 1961, while the order for distribution of surplus moneys, awarding Standard priority over Mitchell, was made November 22, 1961 pursuant to an opinion filed in the Chancery Division after a hearing on an application for surplus moneys. The order fixed the priorities also of holders of another judgment and of two other mortgages, but those interests were not joined as parties in this appeal nor has any question been raised with respect to them in the notice of appeal or on argument. We therefore confine our consideration to the relative priorities of the Standard and Mitchell judgments.
*567 The trial court determined, preliminarily, and Standard concedes, that ordinarily the holder of a judgment junior in time gains priority of lien over a senior judgment by first levying upon the land under execution issued on the judgment. N.J.S. 2A:17-39, as consistently construed by the courts; Clement v. Kaighn, 15 N.J. Eq. 47 (Ch. 1862); Bogert v. Lydecker, 45 N.J.L. 314 (Sup. Ct. 1883); Lippincott v. Smith, 69 N.J. Eq. 787 (E. & A. 1906); Vineland Savings & Loan Assn. v. Felmey, 12 N.J. Super. 384 (Ch. Div. 1950). The Court of Errors and Appeals has held that the reversal of chronological priority follows from the prior execution and levy by the junior judgment holder, regardless of who first sells the land or the mode of sale. Lippincott v. Smith, supra (69 N.J. Eq., at p. 791).
However, the trial court here held that Mitchell could not gain priority for his judgment by execution and levy because the obligation on which it was based was also secured by a mortgage on the land levied upon. Supporting New Jersey cases cited in the opinion, and also partly relied upon by Standard, are Lydecker v. Bogert, 38 N.J. Eq. 136 (Ch. 1884); Van Mater v. Conover, 18 N.J. Eq. 38 (Ch. 1866), and Severns v. Woolston's Ex'rs, 4 N.J. Eq. 220 (Ch. 1842). We are unable to concur in the conclusion of the trial judge that the mere fact that an obligation is secured by a mortgage ipso facto invalidates an execution and levy pursuant to judgment on the obligation upon the mortgaged lands.
If Mitchell's chose were a bond secured by a mortgage rather than, as it is, a note, he would have been precluded from proceeding upon the bond before foreclosing the mortgage and sustaining a deficiency on the debt at the sale, by virtue of N.J.S. 2A:50-2, which makes it mandatory that foreclosure of the mortgage be first resorted to. But had the lien of the mortgage in such case been extinguished by the foreclosure of a prior mortgage and sale of the premises he would have been remitted to an action *568 on the bond subsequent thereto, provided it were commenced within one year of the sale, or of its confirmation if required. N.J.S. 2A:50-8. But these statutes do not apply where the obligation secured by the mortgage is a note. In that case the obligee is free to pursue his ordinary remedies on the obligation without regard to the mortgage. Asbury Park and Ocean Grove Bank v. Giordano, 3 N.J. Misc. 555, 129 A. 202, (Sup. Ct. 1925), affirmed o.b. 103 N.J.L. 171 (E. & A. 1926); Chodosh v. Schlesinger, 119 N.J.L. 405 (E. & A. 1938). Since Mitchell's obligation was in the form of a note he was free to proceed to recover upon and collect the obligation free from the restrictions and inhibitions of the statutes cited.
The Lydecker and other cases cited above as relied upon by Standard do not support its position. As for the Lydecker case itself (38 N.J. Eq. 136), most frequently cited in respect of this general subject, the facts showed that the holder of a bond and mortgage had recovered a judgment at law on the mortgage debt, and bought in the premises at an execution sale. The bill of complaint involved in the cited opinion was filed to restrain the obligee from selling other lands of the complainant to satisfy the balance due on the obligation after crediting the proceeds of the sale. The opinion of the court suggested that the injunction sought would issue unless defendant credited plaintiff on his debt "what he ought to credit, in view of his purchase of the property under the circumstances" (at p. 142) and directed an inquiry whether defendant "ought, under the circumstances, to be permitted to raise any more money by execution, on account of the debt, and if anything, how much." Ibid. While the body of the opinion is not entirely clear as to the court's assessment of the legal or equitable effect of the initial judgment sale, or with regard to its discussion of precedents involving comparable situations, it is perfectly plain that it intimated no view that the execution and sale was irregular or void by mere reason of the fact that it was based upon a judgment taken upon *569 a debt secured by a mortgage and that the property sold was covered by the mortgage.[1] The most for which the case can fairly be cited in relation to Standard's position is that if the manner by or attending circumstances under which a creditor holding a mortgage for his chose sells the mortgaged land through judgment execution are inequitable to the owner he will be restrained from so doing upon application by the owner. None of the earlier New Jersey cases cited in Lydecker, which we need not analyze in detail, holds an execution-sale upon a judgment obtained for a debt secured by a mortgage covering the property sold to be void or illegal per se. In Copperthwait v. Dummer, 18 N.J.L. 258 (Sup. Ct. 1841), (not cited in Lydecker), it it was held to be no bar to an action on a bond that a suit was pending in Chancery to foreclose a mortgage given to secure the bond. (This was, of course, prior to the enactment of L. 1880, p. 255; see footnote.)
Later cases have cited Lydecker as merely a ruling on the procedure for compelling the mortgage creditor to deal equitably with the owner upon undertaking to realize on the obligation. See Lanahan v. Lawton, 50 N.J. Eq. 276, 281, 282 (Ch. 1892); Pettingill v. Hubbell, 53 N.J. Eq. 584, 587 (Ch. 1895); Brady v. Carteret Realty Co., 66 N.J. Eq. 243, 250 (Ch. 1904). As recently as Reid v. McMichael Holdings, 56 A.2d 435 (Ch. 1947) (not officially reported), so ripe an equity mind as Judge (then Vice-Chancellor) Jayne found nothing untoward in the circumstance that two banks contesting for priority of liens, where both held mortgages on a specific parcel, had each sold and bought in the property on execution sales pursuant to judgments obtained on the respective debts without first foreclosing the mortgages. (It does not appear whether the debts were evidenced by notes or bonds.) Implicit in the *570 court's statement that "[a] sale pursuant to the entry of a judgment at law upon an obligation secured by a mortgage does not, of itself, destroy the lien of the mortgage" (at pp. 436, 437), is the tenet that such a sale is not in and of itself void or illegal. As to a debt evidenced by a note, it was stated unequivocally in Verona Trust Co. v. Bergdal, 129 N.J.L. 458, 459 (E. & A. 1943), that, "It is perfectly well settled, in this state, that when a note is secured by a bond and mortgage that [sic] the holder of the note may sue thereon without first foreclosing the mortgage." If he may sue thereon, it is logical that, barring inequitable circumstances which might warrant relief on the affirmative demand therefor by the debtor, he may levy upon and sell the mortgaged property to satisfy his claim.
In the present case Mitchell's judgment was recovered upon a note. No New Jersey case or statute forbids his levying execution upon the debtor's land merely because he also holds a mortgage on the property. In any event, no one can complain about such a procedure except an owner of the property whose interests therein might be shown to be threatened with inequitable invasion thereby. The owner of the presently affected land makes no complaint over Mitchell's execution levy. The procedure employed by Mitchell has the sanction of long judicial acquiescence in and apparent recognition of its prima facie regularity by our courts. Theoretical considerations assertedly militating against the validity of such procedure, advanced by Standard based upon certain decisions in other jurisdictions (which are not uniformly against the trend of our own decisions), do not influence us. No good reason is shown for departing from long settled New Jersey concepts in this area; and a contrary course might unsettle property rights which have become vested in reliance upon the regularity of sales on executions or upon the priority of judgments in circumstances like those here presented. Cf. Lippincott v. Smith, supra (69 N.J. Eq., at p. 792).
*571 Standard does not contend that Mitchell is adversely affected by the fact that the execution and levy here took place subsequent to the institution of the foreclosure. Nor would such a contention have merit. In Vineland Savings & Loan Assn. v. Felmey, supra (12 N.J. Super. 384), priority in foreclosure surplus moneys was adjudicated in favor of a junior judgment lien which was the basis of levy on the surplus money fund subsequent to the foreclosure sale.
Standard makes the added point that Mitchell's failure (or that of his assignor) to answer the foreclosure complaint admits "the priorities of liens set forth therein" and estops him from asserting his lien. However, an examination of the complaint filed herein does not show that it purports to assert the order of priority of the respective junior interests inter se. It merely recites the inferior liens, including the mortgage of Mitchell's assignor and the judgments now owned by Standard, and makes the conventional allegation that all of them are subject to the lien of plaintiff's mortgage. Consequently, the failure of Mitchell or his assignor to answer the complaint admits nothing in relation to Standard's alleged priority. The final judgment in foreclosure makes no determination of relative priorities as between the liens junior to that of the first mortgage under foreclosure. As to them it merely declares that should there be a surplus at the sale the same should be brought before the court "to satisfy the liens, if any, against the premises."
It is true that R.R. 4:82-2 directs the procedure for entry of default judgment in a mortgage foreclosure proceeding, including the submission of proof establishing, inter alia, the priorities of subsequent encumbrances. But the appendices furnished us do not show what affidavits or exhibits, if any, were filed by Standard in respect of the alleged priority of its judgment against that of Mitchell. We assume there was no such proof, as the final judgment did not adjudicate priorities of subsequent encumbrances, *572 and no complaint has been registered by any party as to that circumstance. R.R. 4:82-3 states, in part, that
"No judgment by default shall be taken against a defendant postponing his rights or claims to those of any other defendant, unless the priority of the rights or claims of the latter and the facts upon which they depend are distinctly set forth in the complaint; any controversies between such defendants may be settled upon application for surplus moneys."
Under all the circumstances we have been apprised of through the briefs and appendices, the procedure here followed in making determination of the contest over priorities as between the Standard and Mitchell judgments upon the applications for surplus moneys was proper, in accord with the cited rule, and did not in any way prejudice the rights of either party. Both had a fair hearing on the issue litigated.
Mitchell's judgment claim must be accorded priority over the judgments held by Standard. The order for distribution of surplus moneys is reversed insofar as it adjudicates to the contrary. The cause is remanded for correction of the order consistently with this determination.
NOTES
[1] No mention is made in the opinion, or in later cases citing the decision, of the possible application of the predecessor statute to N.J.S. 2A:50-2, first enacted as L. 1880, p. 255, as amended by L. 1881, p. 184 (3 Comp. Stat. 1910, sec. 48, p. 3421).