174 N.J. Super. 42 (1980)
415 A.2d 365
PULAWSKI SAVINGS & LOAN ASSOCIATION, A CORPORATION OF THE STATE NEW JERSEY, PLAINTIFF,
v.
JOSEPH AGUIAR ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division  Hunterdon County.
February 22, 1980.
*44 Jack L. Wolff for defendant-petitioner R.A. Bartola Advertising, Inc. (Scerbo, Kobin & Wolff, attorneys).
Martin L. Duyk for defendant-petitioner St. Laurie, Ltd.
David A. Rosenberg for defendant-petitioners Johnnie Carson Apparel, Inc., Aetna Factors Corp., Ltd., Factors Corp. Ltd., and Thane Mills, Ltd. (Rosenberg & Saloman, attorneys).
Benjamin Weiss for petitioner Coventry Agency, Inc. (Successor to defendant Patricia Aguiar) (Zucker, Goldberg & Weiss, attorneys).
Gerard F. Long for defendant Joseph P. Aguiar (Johnson & Long, attorneys).
Israel Gazek, for defendant-petitioner Yanni Sfinias.
DREIER, J.S.C.
The motion before the court seeks distribution of surplus monies remaining after payment to plaintiff, the foreclosing mortgagee. Distribution of these funds requires an adjudication of priorities among various judgment creditors, a purchaser and mortgagee. Although this is not a case of first impression, the circuity problem presented herein has not been directly considered in a reported opinion in the last 75 years.
Defendants Joseph Aguiar and Patricia Aguiar (allegedly married) took title to the premises in question on September 23, 1975 as tenants by the entirety. Prior to plaintiff's sheriff's sale defendant Patricia Aguiar conveyed her interest to defendant *45 Coventry Agency, Inc., converting the tenancy to a tenancy in common, irrespective of its former status.[1]
The surplus monies total $55,191.66, or $27,595.83, for each of the cotenants. The attached chart shows such of the various claims by the mortgagee and judgment creditors as are relevant to this motion.
In another action, defendant Bartola obtained a county district court default judgment against defendant Joseph Aguiar and had levied on this judgment. Thereafter, this default was vacated and an interlocutory appeal to the Appellate Division was denied. Here, defendant Bartola has by certification asserted that after the county district court trial, whatever the results may be, it intends to appeal the vacation of the default. It therefore requests this court to withhold distribution of an amount sufficient to satisfy the original default judgment so that it can be paid if Bartola is successful on its appeal and the earlier levy is reinstated. This court has decided to withhold distribution of $3,045.68 as requested. It would be inequitable to distribute the surplus monies fully at this time and eliminate any remedy for Bartola if it is successful on appeal. See Reilly v. Perehinys, 33 N.J. Super. 69, 76 (App. Div. 1954), and Wethling v. Weinstein, 2 N.J. Misc. 750 (Sup.Ct. 1924). The issue remains as to which parties should suffer the potential loss of the $3,045.68 distribution at this time. In other words, over whom will Bartola have priority if it is successful in its appeal?
The legal problem arises out of the application of N.J.S.A. 2A:17-39 (the arcane language of which should make the statute a prime candidate for redrafting):

*46 Whereas, other judgments, and recognizances, besides those, or some of those, by virtue whereof the sale aforesaid was made, might affect the real estate so sold, if no provision be made to remedy the same, and whereas, the persons who have not taken, or will not take out executions upon their judgments, or recognizances, ought not to hinder or prevent such as do take out executions from having the proper effect and fruits thereof, therefore, in any such case, the purchaser, his heirs and assigns, shall hold the lands, tenements, hereditaments, and real estate by him or her purchased as aforesaid, free and clear of all other judgments and recognizances, whatsoever, on or by virtue of which no execution has been taken out and executed on the real estate so purchased.
As judicially construed, this statute grants to a levying judgment creditor a super-priority over senior nonlevying judgment creditors, but not over senior mortgagees. Application of the statute here creates a classic circular priority problem: the mortgagee has priority over the levying junior judgment creditor who has priority over the nonlevying senior judgment creditors who, in turn, have priority over the mortgagee.
In the mid-19th Century the former Court of Chancery resolved this issue by a priority rule which interpreted the statute as: first, applying to all judgment creditors, not only purchasers at execution sales; and, second, giving any mortgagee who had priority over such levying judgment creditor a similar priority over all nonlevying judgment creditors. Clement v. Kaighn, 15 N.J. Eq. 47 (Ch. 1862). This second aspect of the case was followed in a few additional trial court opinions around the turn of the century (see, e.g., Andrus v. Burke, 61 N.J. Eq. 297 (Ch. 1901), and Meeker v. Warren, 66 N.J. Eq. 146 (Ch. 1904)), after seeming approval by the Court of Errors and Appeals in Hoag v. Sayre, 33 N.J. Eq. 552 (E. & A. 1881).
In Hoag (treating a different circular priority problem) the court acknowledged the existence of the Clement rule but applied a different rule which was noted as "development of the principle maintained and acted on in Clement v. Kaighn, ..." Id. at 561. This is the only reported quasi-application of the *47 Clement circuity rule by an appellate court. Cf. Lippencott v. Smith, 69 N.J. Eq. 787, 790-792 (E. & A. 1905), firmly endorsing Clement insofar as it held that the statute is applicable to execution proceedings as well as the sale of lands (the first Clement rule), without discussing the circuity problem. Since then the Clement circuity rule has merely been cited by way of dictum. See, e.g., Silver v. Williams, 70 N.J. Super. 456, 459-460 (Ch. Div. 1961), rev. in part on other grounds 72 N.J. Super. 564 (App. Div. 1962).
The Clement rule has been criticized in 29 N.J. Practice (Cunningham and Tischler, Law of Mortgages), § 116 at 543, as follows:
With all due respect, it is submitted that the subordination of the senior judgment to the mortgage was not `inevitable,' and that it is in fact a non sequitur. What the court did was really to ignore the `circularity' of the priorities and to solve the problem by disregarding the senior judgment's statutory priority over the mortgage. This was perhaps a result of the court's failure to consider the relative dollar amounts of the several encumbrances involved. But despite criticisms which can be levied against it, the rule of Clement v. Kaighn has been consistently applied in subsequent New Jersey cases of the same type.
The rule was also questioned in Andrus v. Burke, supra, 61 N.J. Eq. at 299, by Vice-Chancellor Pitney:
... [I]t was held [in Clement v. Kaighn] that, because judgments subsequent to the complainant's mortgage had been recovered, followed by executions and levies, which placed them prior to the older judgments, it also placed the complainant's mortgage prior to the older judgment. I have never been able to understand the logic of this reasoning, having been taught while a law student that the legal puzzle presented by the situation was insoluble on any known principles. The difficulty, of course, is to find any reason why, after A's priority over B is clearly established, the subsequent intervention of the lien of C should change the priorities between A and B. But the decision of Chancellor Green was followed without question by the Court of Errors and Appeals, in Hoag v. Sayre [33 N.J. Eq.] 552, and, of course, is binding upon me. [Emphasis supplied]
*48 As was noted earlier, however, the Hoag v. Sayre decision was not a binding endorsement of Clement v. Kaighn, but rather as noted in Cunningham and Tischler, op. cit. at 544 was "based upon an entirely different principle." The effect of the Clement circuity rule is to elevate a mortgage to an enhanced position merely because a junior judgment creditor fortuitously has levied upon the property; such need not be the result. In this case $17,594.88 is owed to judgment creditors who are prior to the mortgagee (United States of America), which is prior to Bartola's docketing of the original default judgment (now vacated) upon which Bartola has levied. Chart C below shows the effect of a successful appeal (and thus reinstatement of judgment and levy) on the creditor and mortgagee under the Clement rule.
A different approach is suggested in a "contractual subordination" setting in Cunningham and Tischler, op. cit. at 542, as follows:
1. Set aside from the fund the amount of A's claim;
2. Pay the amount of A's claim so set aside to
(a) C, to the amount of his claim, and then to
(b) A, to the extent of any balance remaining after C's claim is satisfied;
3. Pay B the amount of any balance remaining after the amount of A's claim has been set aside and paid out as indicated in 2, above.
4. If any balance remains in the fund after A's claim has been set aside and B's claim has been satisfied, distribute the balance to
(a) C, if not fully satisfied out of the amount set aside as indicated in 2, above; and then to
(b) A, if any balance still remains.
A similar approach was taken in a related federal-state circuity situation in In re Holly Knitwear, Inc., 140 N.J. Super. 375 (App. Div. 1976). There, Judge Botter also restricted a landlord's super-priority to that portion of the proceeds that was payable to those prior to the unaffected party. Cf. Hoag v. Sayre, supra, which also applied a more equitable priority rule in a situation involving a failure to record a chattel mortgage.
*49 Here, a more equitable rule would require that as to the $17,594.88 in judgments prior to the mortgagee, Bartola should be accorded its statutory super-priority  if it is successful in its appeal. It would then relegate the most junior of these earlier judgments to a position subordinate to the mortgagee. The mortgagee cannot complain because it remains unaffected by the levy  it is neither penalized nor enriched. There is no unfairness to the judgment creditors who could well have protected themselves by levying in the manner attempted by Bartola, and are penalized for their own failure to do so. In essence, their inaction suggests laches. See Clement v. Kaighn, supra, 15 N.J. Eq. at 59. Such failure, however, should not work to the detriment of any mortgagee. Therefore the statute can be given full effect if the levying creditor is given priority over other judgment creditors, and the priority of the mortgagee is unaffected.
An argument can be made that the rule enunciated in Clement v. Kaighn, supra, should be followed by virtue of its age, and the concomitant predictability of result. However, when a rule produces an unjust result it cannot be free from reconsideration by a court of equal jurisdiction. There is no long standing reliance by creditors upon the circuity resolution aspects of Clement.[2] No mortgagee acts or refrains from acting in expectation that a junior levying judgment creditor will create a windfall. But to the contrary, unsuspecting senior judgment creditors who may be willing to accept the priority of a levying junior judgment creditor are, by illogical though hoary judicial interpretations of the statute, placed behind seemingly subordinate mortgagees. Repetition of injustice does not by the passage of time mandate further injustice. As is illustrated by *50 chart C, the Clement rule results in an unwarranted benefit to the mortgagee at the expense of prior unlevying judgment creditors.
The rule applied in this case, however, more equitably follows the seeming statutory purpose. The statutory rule is one of priority of judgments, and the interpretation in this opinion goes no further than to establish such priority, leaving the mortgage unaffected. Accordingly, the order of priority for the various judgments and mortgagees shall be as set forth in charts A and B below, which compare the distributions in the two possibilities of (A) Bartola losing the appeal or (B) Bartola winning the appeal, applying this court's solution to the circuity problems.
When a decision is rendered in the Bartola appeal, the $3,045.88 shall be awarded either to Bartola on one hand, or Coventry and Johnnie Carson Apparel on the other. All undisputed liens may be paid now from the proceeds of the sale.

*51
 PARTY CLAIM AMOUNT[1a]
 |
---------------------------------------------------------------------------|
 1. Johnnie Carson Apparel, Inc. (Judgment vs. J.A.) $ 3,437.02 |
 (no levy) |
 |
 2. St. Laurie, Ltd. (Judgment vs. J.A.) 12,378.88 |
 (levy after Bartola) |
 |
 3. Aetna Factors Corp., Ltd. (Judgment vs. J.A. 1,779.04 |
 (no levy) & P.A.) |
 |
 4. United States of America (Judgment vs. J.A. 27,135.33 |
 (mortgage) & P.A.) |
 |
 5. 6. & 7. Misc. judgments vs. J.A. |
 |
 8. R.A. Bartola Advertising, Inc. (Judgment vs. J.A.) 3,045.68 |
 (disputed levy) |
 |
 9. Misc. judgment vs. J.A. |
 |
10. Midlantic National Bank (Judgment vs. J.A. 652.12 |
 & P.A.) |
 |
11. Coventry Agency, Inc. (Purchaser from P.A.) |
 9-24-79 ___________ |
 Total: |
 | | |
 | (A) UNSUCCESSFUL | |
 | APPEAL[2a] | (B) SUCCESSFUL |
 | BY BARTOLA | APPEAL BY |
 | | BARTOLA |
 | | |
 PARTY | J.A. P.A. | J.A. P.A. |
-------------------------|------------------------|------------------------|
 1. Johnnie Carson | | |
 Apparel, Inc. (no | $ 3,437.02 ____ | $ 1,280.86 ____ |
 levy) | | |
 | | |
 2. St. Laurie, Ltd. | 12,378.88 ____ | 12,378.88 ____ |
 (levy after Bartola) | | |
 | | |
 3. Aetna Factors Corp., | 889.52 $ 889.52 | ____ $ 1,779.04 |
 Ltd. (no levy) | | |
 | | |
 4. United States of | 10,890.41 16,244.92 | 10,890.41 16,244.92 |
 America (mortgage) | | |
 | | |
 5. 6. & 7. Misc. | | |
 judgments vs. J.A. | | |
 | | |
 8. R.A. Bartola | | |
 Advertising, Inc. | ____ ____ | 3,045.68 ____ |
 (disputed levy) | | |
 | | |
 9. Misc. judgment vs. | | |
 J.A. | | |
 | | |
10. Midlantic National | | |
 Bank | ____ 652.12 | ____ 652.12 |
 | | |
11. Coventry Agency, | | |
 Inc. | ____ 9,809.27 | ____ 8,919.75 |
 _________|________________________|________________________|
 Total: | $27,595.83 $27,595.83 | $27,595.83 $27,595.83 |
 | (C) SUCCESSFUL APPEAL
 | BY BARTOLA
 | APPLYING FORMER
 | CIRCUITY RULE
 |
 PARTY | J.A. P.A.
-------------------------------------|-------------------------
 1. Johnnie Carson Apparel, Inc. | $ ____ ____ |
 (no levy) | |
 | |
 2. St. Laurie, Ltd. | 10,982.48 ____ |
 (levy after Bartola) | |
 | |
 3. Aetna Factors Corp., Ltd. | ____ $ 1,779.04 |
 (no levy) | |
 | |
 4. United States of America | 13,567.67 13,567.66 |
 (mortgage) | |
 | |
 5. 6. & 7. Misc. judgments vs. J.A. | |
 | |
 8. R.A. Bartola Advertising, Inc. | 3,045.68 ____ |
 (disputed levy) | |
 | |
 9. Misc. judgment vs. J.A. | |
 | |
10. Midlantic National Bank | ____ 652.12 |
 | |
11. Coventry Agency, Inc. | ____ 11,597.01 |
 |-------------------------|
 | $27,595.83 $27,595.83 |
 Total (Payments from J.A. & P.A.) received by each creditor:
CREDITOR (1) (2) (3) (4) (8) (10) (11)
 ---------------------------------------------------------
(A) Bartola loses $3,437.02 $12,378.88 Full Full -0- Full $ 9,809.27
(B) Bartola wins 1,280.86 12,378.88 Full Full $3,045.68 Full 8,919.75
(C) Bartola wins -0- 10,982.48 Full Full $3,045.68 Full 11,597.01
 (former
 Chancery rule)
 Distribution as of 2/22/80
 CREDITOR Clerk to retain ............ $ 3,045.68
(A) Bartola loses Party # 1 ................. 1,280.86
(B) Bartola wins Party # 2 ................. 12,378.88
(C) Bartola wins Party # 3 ................. 1,779.04
 (former Chancery rule) Party # 4 ................. 27,135.33
 Party # 10 ................. 652.12
 Party # 11 ................. 8,919.75

NOTES
[1] The marital status of the parties would not have affected the creditors' rights as to the surplus monies. See Fort Lee S. & L. Ass'n v. Li Butti, 55 N.J. 532 (1970), reversing on dissent 106 N.J. Super. 211, 214 (App. Div. 1969).
[2] This is in contrast to the general reliance by creditors and the bar on the first Clement rule, mandating the general application of the statute to all types of execution. See Lippencott v. Smith, supra.
[1a] The figures used in this opinion are as of the first return date of February 8, 1980. The court has not permitted further accrual of interest in these calculations or distributions.
[2a] The court was informed at the adjourned oral argument of an executory settlement between various parties which would distribute the surplus monies in accordance with Chart A when executed. One of the parties has therefore urged that this opinion might be moot. This court is nonetheless compelled to decide the issue of distribution because, although the settlement contemplates this court withholding distribution of $3,045.68 pending completion of the various conditions of the settlement, the court cannot resolve to whom the other funds should be distributed without resolving the circuity problem. The question presented is therefore not moot.