140 N.J. Super. 375 (1976)
356 A.2d 405
IN THE MATTER OF THE GENERAL ASSIGNMENT FOR THE BENEFIT OF CREDITORS OF HOLLY KNITWEAR, INC., ASSIGNOR. FELDWIN REALTY CO., APPELLANT, TEXTILE FINANCIAL CORP., RESPONDENT, CROSS-APPELLANT, UNITED STATES OF AMERICA, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 15, 1975.
Decided March 9, 1976.
*378 Before Judges KOLOVSKY, BISCHOFF and BOTTER.
Mr. Jerome S. Lieb argued the cause for appellant Feldwin Realty Co. (Messrs. Lieb, Teich & Berlin, attorneys).
Mr. Harold M. Cohen argued the cause for respondent, cross-appellant Textile Financial Corp. (Messrs. Kleinberg, Moroney, Masterson & Schachter, attorneys).
Mr. Karl Schmeidler argued the cause for respondent United States of America (Mr. Jonathan L. Goldstein, United States Attorney, attorney; Mr. George Kandravy, Assistant United States Attorney, of counsel; Mr. Scott P. Crampton, Assistant Attorney General, Mr. Gilbert E. Andrews, Mr. Crombie J.D. Garrett and Mr. Karl Schmeidler, attorneys, Tax Division, Department of Justice, of counsel and on the brief).
*379 The opinion of the court was delivered by BOTTER, J.A.D.
Holly Knitwear, Inc. made an assignment for the benefit of creditors on December 16, 1970. N.J.S.A. 2A:19-1 et seq.; R. 4:54; see In re Xaviers, Inc., 66 N.J. Super. 561 (App. Div. 1961). Its assets were sold and the trial court was called upon to determine the priority of claims against the fund. The principal issue on this appeal concerns the priority of liens held by United States of America (United States), a secured creditor, Textile Financial Corp. (Textile), and the assignor's landlord, Feldwin Realty Co. (Feldwin). Under federal law, the secured creditor's lien concededly had priority over the Federal Government's claim under 31 U.S.C.A. § 191 (United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954); Exchange Bank & Trust Co. v. Tubbs Mfg. Co., 246 F.2d 141, 143 (5 Cir.1957), cert. den. 355 U.S. 868, 78 S.Ct. 118, 2 L.Ed.2d 75 (1957)), which in turn had priority over the landlord's lien (United States v. Waddill, Holland & Flinn, Inc., 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294 (1945); United States v. Saidman, 97 U.S. App. D.C. 344, 231 F.2d 503 (D.C. Cir.1956)), but under state law the landlord's lien had priority over the lien of the secured creditor. N.J.S.A. 2A:44-166. The funds were insufficient to pay these claims in full. The issue raised has been termed the circularity of priorities. See Plumb, "Federal Liens and Priorities  Agenda for the Next Decade," 77 Yale L.J. 228, 231 (1967); Note, "Circuity of Liens  A Proposed Solution," 38 Colum. L. Rev. 1267 (1938); Benson, "Circuity of Lien  A Problem in Priorities," 19 Minn. L. Rev. 139 (1935). For cases in New Jersey dealing with problems arising solely under state law, see Hoag v. Sayre, 33 N.J. Eq. 552 (E. & A. 1881); Jarecki v. Manville Bakery, Inc., 7 N.J. Super. 387 (Ch. Div. 1950); Vanderhoff v. Wasco, 109 N.J. Eq. 463 (Ch. 1932); Fidelity Union Title & Mtg. Guar. Co. v. Magnifico, 106 N.J. Eq. 559 (Ch. *380 1930); Meeker v. Warren, 66 N.J. Eq. 146 (Ch. 1904); Andrus v. Burke, 61 N.J. Eq. 297 (Ch. 1901); Clement v. Kaighn, 15 N.J. Eq. 47 (Ch. 1862).
The facts are set forth in the trial court's opinion, reported at 115 N.J. Super. 564, which deals with some issues not presented on this appeal. Claims have been presented on behalf of:
(a) Two creditors, Jonathan Logan, Inc. (Logan) and Northern Financial Corp. (Northern), holders of purchase money security interests on specific items of personal property;
(b) United States, for social security and withholding taxes, totaling approximately $40,000;
(c) Textile, for approximately $24,000 plus attorneys' fees, for the balance due on loans made pursuant to an agreement secured by a lien on all assets, including after-acquired property;
(d) Feldwin, for approximately six months' rent due in the approximate sum of $14,000;
(e) State of New Jersey, for taxes due in the sum of $6,000, and
(f) Alleged wage-earners.
Out of the total assets of approximately $76,000 the lower court ordered payment of approximately $16,000 to Logan and Northern based upon their purchase money security priority, subject to a contribution toward administration expenses. The trial judge also determined that the alleged wage claims were not entitled to priority accorded by N.J.S.A. 2A:19-30 because the claims were payable to a trust fund for health, welfare and recreation benefits and can be claimed only by the union, not the wage-earners. Finally, the court ordered the remaining $60,000 (all figures used are approximate and are rounded off for convenience), less administrative expenses ($24,000), which included legal fees, or a balance of $36,000 distributed, so far as relevant, as follows:

*381 1. To Textile, $24,000, less $14,000 claimed by Feldwin (the landlord's lien being superior under state law), which $14,000 is to be designated a special fund, leaving $10,000 for Textile, against which an assessment ($1500) for a portion of administration expenses was charged;
2. To United States, the special fund of $14,000, less $2100 for its share of administrative expenses, United States having priority over the landlord's lien under federal law;
3. To United States, the balance of funds available.
Since the claims of Textile and United States exhausted the fund as distributed by the trial court, Feldwin did not receive any payment, nor did other preferred creditors or general creditors. Feldwin appealed, Textile cross-appealed and United States responded to protect its position. No other creditors appealed or otherwise participated on this appeal. No attack is made upon the distribution to Logan and Northern. The dispute before us concerns only the distribution among United States, Textile and Feldwin of approximately $36,000 toward their claims.
Feldwin contends that Textile's claim should be set aside first, since it has priority under federal law over United States' claim, the balance to be paid to United States, and then out of Textile's share we should carve out $14,000 for the landlord's lien, which under state law is superior to Textile's lien. At oral argument United States acknowledged support for this position, although this would require payment of the trial court's special fund to Feldwin and not to United States. (The Federal Government's brief stated that it was concerned only with assuring proper priority for its claim, but it also asserted that the court's disposition of the special fund was in accord with In re Quaker City Uniform Co., 238 F.2d 155 (3 Cir.1956),[1] and that the decision of trial court was correct.)
*382 Textile disputes the trial court's disposition and disagrees with Feldwin's approach. First, Textile contends that Feldwin is not entitled to a preferred lienor's priority since it was negligent in not "perfecting" its "inchoate" lien by sale pursuant to N.J.S.A. 2A:44-167 or by distraint pursuant to N.J.S.A. 2A:33-6. We reject this contention.
Under state law, the landlord's lien attaches "from the date the rent is unpaid" (N.J.S.A. 2A:44-166), without any requirement for perfection by steps taken to enforce the lien. Nor do we find a basis here for estoppel. There is no showing of detrimental reliance on the landlord's delay in distraining. Cf. Hill Dredging Corp. v. Risley, 18 N.J. 501, 537 (1955). It is not unusual for creditors to withhold execution in the hope that a debtor will surmount his difficulties with time. Textile's reliance on Silver v. Williams, 70 N.J. Super. 456 (Ch. Div. 1961), mod. 72 N.J. Super. 564 (App. Div. 1962); Meeker v. Warren, supra, and Andrus v. Burke, supra, is misplaced since they deal with the priority of judgment creditors. Clearly, the landlord's lien is given first priority by N.J.S.A. 2A:44-166, which provides:
Such lien [for six months' unpaid rent] * * * shall have priority and be paramount to any title, lien, interest, mortgage, judgment or other encumbrance created or acquired after machinery or other chattels are placed in the premises.
Next, Textile urges the "subordination" approach to circular liens, contending that the first lienholder, the landlord, is subordinated to United States whose lien, under federal law, is junior to Textile's. Thus, Textile would deduct Feldwin's *383 claim and set it aside. This affords the landlord his priority under state law. But that fund must be given to United States since Feldwin is behind United States under federal law. After Feldwin's claim is thus disposed of, Textile's claim would be paid, since Textile "primes" United States under federal law. Any funds remaining would then go to United States to satisfy its lien. In effect, this approach starts with state law but subjects the payments that would ordinarily be made based on state law priorities to the control of federal law.
Any solution may seem arbitrary and produces anomalous results. This is because certain claims are superior under federal law and inferior under state law, so that both the superiority and inferiority of a given claim cannot be met at one time. The approach which should govern, in our opinion, is suggested by United States v. City of New Britain, supra, and United States v. Buffalo Savings Bank, 371 U.S. 228, 83 S.Ct. 314, 9 L.Ed.2d 283 (1963).
Congress gave United States priority for its lien "as to any funds in excess of the amount necessary to pay the mortgage * * *." United States v. City of New Britain, supra, 347 U.S. at 88, 74 S.Ct. at 372, 98 L.Ed. at 527. Thus, out of the available proceeds, the federal lien is inferior only to Textile's lien for $24,000 (plus attorneys' fees, allowable under 26 U.S.C.A. § 6323(e) (3)). This sum should be first set aside and from the remainder United States would receive payment against its claim since it is superior to all other claimants. The federal law has been satisfied, and United States has no further interest in the disposition of the money set aside for Textile.
Now that the Federal Government's claim has been "satisfied," we should look to state law to determine the priority of liens against the fund available for distribution. Out of this fund, as between the landlord and Textile, the landlord must be paid first. It makes no difference that, after money is set aside to pay Textile's claim because of its superiority to the federal claim, some of Textile's money *384 will ultimately be paid to the landlord under state law. This may seem offensive to federal law, which would have United States paid before the landlord receives any payment. But the New Britain and Buffalo Savings Bank cases tolerate this result. The Federal Government cannot complain of the disposition of funds as between Feldwin and Textile, since federal law requires United States to yield to Textile's claim. If the landlord were not on the scene United States would get no more than the surplus remaining after payment of Textile's claim. The fact that state law requires Textile to give up part of its funds to Feldwin causes no loss to United States. In this sense, then, state and federal laws are fulfilled. This result accords with the holdings in Exchange Bank & Trust Co. v. Tubbs Mfg. Co., supra; Southern Ohio Savings Bank & Trust Co. v. Bolce, 165 Ohio St. 201, 135 N.E.2d 382 (Sup. Ct. 1956), and Samms v. Chicago Title & Trust Co., 349 Ill. App. 413, 111 N.E.2d 172 (App. Ct. 1953). Cf. In re Lieb Bros., 150 F. Supp. 68 (D.N.J. 1957), aff'd 251 F.2d 305 (3 Cir.1958).
Finally, we turn to the question of the apportionment of administrative expenses insofar as it affects the claims of Textile, Feldwin and United States to the balance of approximately $36,000. (We are not concerned with so much of the court's rulings as ordered contribution towards administrative expenses by Northern and Logan, the holders of purchase money security interests on specific items of personal property sold by the assignee. Those portions of the court's order are not before us since Northern and Logan did not appeal and, in any event, as far as they are concerned, a charge of a pro rata portion of administrative expenses may be justified under cases such as Laudan v. ABC Travel System, Inc., 64 N.J. Super. 204 (Ch. Div. 1960); Decorative Utilities Corp. v. National Motors Trucking Corp., 123 N.J. Eq. 48 (Ch. 1938); Franklin Lumber Co. v. Harold Anderson, Inc., 104 N.J. Eq. 306 (Ch. 1929), mod. on other grounds 105 N.J. Eq. 542 (E. & A. 1930); Lembeck v. Jarvis Terminal Cold Storage Co., 68 N.J. Eq. *385 352 (Ch. 1904); cf. Albert & Kernahan, Inc. v. Franklin Arms, Inc., 107 N.J. Eq. 468 (E. & A. 1930).) The trial judge determined that 15% of each payment should be deducted in consideration of administrative expenses (which, incidentally, had first been withdrawn before determining the fund available for distribution). Feldwin asserts this was error, that administrative expenses should be paid solely out of the general funds and not charged back to each claimant. We agree.
It is not disputed that administrative expenses have priority over federal tax claims (see Abrams v. United States, 274 F. 2d 8, 12 (8 Cir.1960); cf. Kennebec Box Co. v. O.S. Richards Corp., 5 F.2d 951 (2 Cir.1925); Lerman v. Lincoln Novelty Co., 130 N.J. Eq. 144, 147 (Ch. 1941)), and over claims of other creditors. See In re Munson-Lied Co., 68 N.J. Super. 281, 284 (App. Div. 1961); In re Xaviers, Inc., supra; cf. N.J.S.A. 14A:14-21(1); Albert & Kernahan, Inc. v. Franklin Arms, Inc., supra, 107 N.J. Eq. at 470. However, the general rule is that administrative expenses are not prorated among claimants. See Albert & Kernahan, Inc. at 471. Prorating expenses may be justified when secured creditors have liens on different properties within the estate. See id.; Laudan v. ABC Travel System, Inc., supra. However, where there is a "single fund subject to successive liens" the administrative expenses should be paid first, followed by the claims in their order of priority. Albert & Kernahan, Inc. v. Franklin Arms, supra, 107 N.J. Eq. at 471.
We see no justification for prorating expenses in this case among Textile, Feldwin and United States. They were successive lienholders to one general fund. To deduct 15% from all payments would diminish the priority of certain creditors by giving lower ranking claims access to those funds. "[W]e fail to see the justice of depriving a claim of its priority in order that an inferior claim may be proportionately benefited." Id. at 471.
*386 Moreover, this procedure created unnecessary complication in the disposition of funds. Administrative expenses were set aside and then claims with priority were calculated. From these, 15% was deducted and made available for lower ranking creditors, whose claims in turn would be subject to the 15% deduction. This would create funds available for the next creditor, and so on. We conclude, therefore, that administrative expenses should be paid first out of the assignee's general funds and that the parties on this appeal should receive their payments without deduction in order of priority we have delineated above.
The judgment below is modified and, as modified, affirmed. The cause is remanded to the trial court so that the specific amounts can be recalculated and distribution ordered in accordance with this opinion. No costs on this appeal to any party.
NOTES
[1] Contrary to this assertion, in Quaker City a "subordination" approach was used, giving the highest priority to administrative expenses, followed by the landlord's lien and then the mortgage. The "carve out" approach of the trial court was not used. In Quaker City administrative expenses (comparable to United States' claim here) had priority over the landlord's lien which had priority over the mortgage lien which, in turn, had priority under federal law over administrative expenses. The Quaker City solution was specifically rejected in Jordan v. Hamlett, 312 F.2d 121, 125 (5 Cir.1963).