## VREELAND *vs.* JACOBUS and wife.

1. A wife has the right to have one third of the proceeds of sale of the equity of redemption, under a foreclosure, invested, and the interest paid to her after her husband's death; but she will not be entitled to any interest during his life.

2. A decree of this court for a divorce *a mensa et thoro,* directing an annuity to be paid to the wife, and that it should be a lien from its date, upon the husband's lands, is not a judgment so as to bind the lands as against strangers to the suit, when no abstract thereof has been filed in accordance with the fifty-ninth section of the chancery act.

3. A conveyance of real estate before sequestration issued, although after the decree upon which it is founded, is valid, in the absence of any proof of *mala fides.*

On petition of Susan E. Jacobus, for surplus moneys.

*Mr. McDonald,* for petitioner.

THE CHANCELLOR.

In this case, mortgaged premises were sold by an execution in a foreclosure suit, in which Vreeland was complainant, and Abraham J. Jacobus, and his wife, the petitioner, were defendants. The *fieri facias* was issued August 28th, 1867. The bill was filed April 24th of that year, and the sale under the writ was after December fourth. The sale produced

about $2700 above the mortgage debt and costs, which is paid into court.

The petitioner had filed a bill against her husband for a separation and alimony, and on the 18th day of June, 1867, obtained a decree in this court for a divorce a *mensa et thoro*, which directed that her husband should pay her $312 a year, in equal quarter-yearly payments, from the date of the decree, and within thirty days after service of a copy of the decree, should give security for the payment, and that the decree should, from its date, be a lien upon his real and personal estate; it also directed the husband to pay to her $50 for counsel fees, and her costs to be taxed, and that she have execution therefor. This decree was served upon Jacobus on the 20th day of July, 1867. He failed to comply with it, and to give the security required, and on the 4th of December following, a writ of sequestration was sued out and levied upon his equity of redemption in the mortgaged lands. On the 18th of November, a judgment was entered by confession against Abraham J. Jacobus, in favor of his father James A. Jacobus, in the Circuit Court for the county of Essex, in which the mortgaged lands lie; this judgment was for $2080.20; and on the same day an execution was issued and levied on them.

The complainant claims a right in the surplus moneys; first, by virtue of her inchoate right of dower in the equity of redemption, of the sale of which the surplus is the proceeds. She has such right, beyond question, and the court will see that she is protected in it, but she will not be entitled to any payment by virtue of it during the life of her husband. She will have the right to have one third of the money invested, and the interest paid to her after her husband's death; in his life it must go to him, or to such creditors or encumbrancers as may have a legal claim.

She claims, secondly, that as the decree for alimony was prior to the judgment of James A. Jacobus, and was declared a lien on the property of the defendant from its date, she has a right, under the sequestration upon it, to have this

surplus invested under the order of the court, and the interest, and principal if necessary, applied to the payment of her costs, and the alimony decreed to her.

This controversy is between her and James A. Jacobus, who holds the judgment. He was not a party to the foreclosure suit; but as he obtained his judgment *pendente lite,* he is bound by the sale and foreclosure, and his interest, if any, is in the surplus money.

He has had due notice of this application, but has not appeared to set up or sustain his claim; but with the fact of the judgment set out in the petition, on which this application depends, I am not at liberty to disregard it, or to treat the judgment as fraudulent, or entered to defraud and delay the petitioner or other creditors, but can only determine whether the lien of the petitioner on the lands, by virtue of her decree, was such that it would have priority to a subsequent judgment against, or conveyance by Jacobus, if *bona fide* and in good faith, although for the purpose of giving preference to another creditor.

The decree is a judgment, so far as the counsel fee and costs are concerned, but is not a judgment so as to bind lands, so far as the annuity is concerned. At common law, a decree in equity for the payment of money did not bind lands ; that effect was given to it in this state by the fifty-fifth section of the chancery act, by which, as against A. J. Jacobus, it bound the lands as to the costs and counsel fee. But, by the fifty-ninth section of that act, no decree in chancery is a lien upon lands not described in it, against persons not parties to the suit, unless an abstract of it shall have been filed in the office of the clerk of the Supreme Court. That does not appear to have been done in this case, and, therefore, even had the decree for the annuity been a judgment such as to bind lands, it would have no effect against James A. Jacobus. This judgment, without regard to priority of execution, by its entry became the first lien, unless the decree declaring the alimony a lien, or the doctrine of sequestration, postpones it.

U *

This court has no power, except perhaps as against parties to a suit, to create a priority of lien against the express direction and clear policy of a positive statutory enactment. When the law declares that a decree shall not be a lien, as against strangers to the suit, until an abstract be filed, a decree of this court that it shall be a lien from its date, will be construed to imply that it shall be so, upon the statute being complied with. If it were expressly otherwise, the statute must prevail as to strangers, and the decree be void; as to partners it might be otherwise.

The only other question is, whether a sequestration out of this court does not differ from an execution, so that any alienation made after the decree on which it is founded, is void; and whether the alienation or encumbrance created by the defendant, in this case, after service of a copy of the decree, was not a contempt of court, such as to render it nugatory.

There is no reason or authority to sustain this position. It is not reasonable that a husband, who is directed to pay his wife a certain alimony, should not be allowed to use his property to pay or secure his just debts, or to furnish himself with the necessaries of life, until she has, in some way provided by law, made her claim a legal lien upon his property. The alimony should be out of the property of her husband, not out of that of his creditors.

The only authorities found upon the point, are against the position. Lord Nottingham, in *Coulston* v. *Gardiner*, fully reported in a note in 3 *Swanst.* 278, says: "A purchaser for a valuable consideration, before the sequestration, is free; for though a decree as to some purposes be equal with a judgment, yet, it is never so till a sequestration awarded, for, till then, neither lands nor goods are bound." Lord Hardwicke, in *Hamblyn* v. *Ley*, reported in a note in 3 *Swanst.* 301, held the same doctrine. In that case, the decree was made on July 6th, 1738, to pay £300 into bank. On the 13th of July, Ley conveyed an estate for £600 to his nephew, and took the bond of the nephew for the whole consideration. On December 9th, he assigned a term to his two sisters, for £220, actually paid by them. A sequestration issued April

6th, 1739, by which both estates were sequestered. The sale to the nephew was held void, as clearly not *bona fide;* but the assignment to the sisters, being *bona fide,* and for valuable consideration, was held good as against the prior decree. And this was so held, without regard to the fact that the sisters may have known of the decree, for Lord Hardwicke says: "It is certain that any person *foreseeing* a judgment, at common law, or a sequestration in this court, *may give a preference.*" The right to give preferences after suit brought, is well established in this state.

If the petitioner wishes to show fraud or *mala fides* in the judgment of James A. Jacobus, a reference will be ordered to inquire into it.