12 N.J. Super. 384 (1950)
79 A.2d 714
VINELAND SAVINGS & LOAN ASSN., PLAINTIFF,
v.
JAMES R. FELMEY AND DOROTHY FELMEY, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided October 31, 1950.
*387 Mr. John O. Milstead for the plaintiff (Messrs. Milstead & McElroy, attorneys).
Mr. Phillip P. Wodlinger for petitioner, Millville National Bank.
Mr. Alfred E. Modarelli, United States District Attorney.
HANEMAN, J.S.C.
The present action results from an application for surplus monies arising from a sale held in a mortgage foreclosure. The particular question concerns the priority of two judgment creditors of the mortgagors.
The Vineland Savings and Loan Association held a mortgage executed by and encumbering certain real estate owned by the defendants James and Dorothy Felmey. On the 9th day of March, 1950, the said Vineland Savings and Loan Association filed a complaint seeking to foreclose said mortgage, joining the Corn Exchange National Bank and Trust Company by reason of a judgment held by it against the said mortgagors, obtained in the District Court of Cumberland County, which was docketed in the office of the Clerk of Cumberland County on the 18th day of August, 1949.
Thereafter, and during the pendency of the foreclosure proceedings, the Millville National Bank obtained a final judgment against James and Dorothy Felmey in the District Court of Cumberland County on May 1, 1950, which judgment was docketed in the Cumberland County Court on June 22, 1950, and in the New Jersey Superior Court on August 2, 1950. On June 21, 1950, said real estate here involved was sold by the Sheriff of Cumberland County in connection with said foreclosure, resulting in a surplus of $561.06. The sheriff's deed is dated July 18, 1950, and was delivered to the purchaser a day or two after its date.
*388 Execution on the judgment of the Millville National Bank was issued and levy made by the Sheriff of Mercer County on the said surplus monies then in the hands of this court on August 10, 1950. No further proceedings in connection with this levy were thereafter taken.
The levy was made in the following language:
"levy upon the rights and credits of James Felmey & Dorothy Felmey * * * upon all the right, title and interest of said defendants in and to all moneys deposited with the Superior Court of New Jersey, representing surplus moneys paid into said Superior Court by the Sheriff of Cumberland County, arising out of the sale of real estate conducted by said Sheriff of Cumberland County, in the matter of Vineland Savings and Loan Association v. James R. Felmey, et ux., et als., Docket No. F-1278-49."
On September 14, 1949, the said Corn Exchange National Bank and Trust Company assigned said judgment to the United States of America, which assignment was recorded in the Clerk's Office of Cumberland County on April 17, 1950. A transcript of said judgment was docketed with the Clerk of the Superior Court of New Jersey on July 13, 1950.
Neither the said Corn Exchange National Bank and Trust Company nor the United States of America have taken any proceedings, either by way of answer in the foreclosure or by way of issuing execution upon said judgment.
The Millville National Bank takes the position that it is entitled to be first paid out of the surplus monies prior to the United States of America by virtue of the levy and execution above referred to, under R.S. 2:26-137. This statute reads as follows:
"Whereas, other judgments, and recognizances, besides those, or some of those, by virtue whereof the sale aforesaid was made, might affect the real estate so sold, if no provision be made to remedy the same, and whereas, the persons who have not taken, or will not take out executions upon their judgments, or recognizances, ought not to hinder or prevent such as do take out executions from having the proper effect and fruits thereof, therefore, in any such case, the purchaser, his heirs and assigns, shall hold the lands, tenements, hereditaments, and real estate by him or her purchased as aforesaid, *389 free and clear of all other judgments and recognizances, whatsoever, on or by virtue of which no execution has been taken out and executed on the real estate so purchased."
The United States of America, on the other hand, in effect assumes the position (1) that the property levied on is in custodia legis and hence not subject to levy; (2) at the time of levy the interest of the judgment debtor in the realty had been extinguished and that the surplus funds were personalty; and (3) the levy was upon the "right, title and interest" (rights and credits) of the judgment debtor in the fund and as such was subject to the lien of its judgment.
In order for the Millville National Bank to succeed upon its theory it becomes necessary to first ascertain whether a levy may be made on property in custodia legis.
In Fredd v. Darnell, 107 N.J. Eq. 249, 152 A. 236, (Ch. 1930), the court said, at page 253:
"It is a general rule that money or other property in the hands of an officer of a court is regarded as being in custodia legis, and in consequence ordinarily cannot be reached by execution in the absence of legislative authority. That rule appears to be based upon a necessity, incident to orderly judicial procedure, for any court which has acquired primary jurisdiction over property to continue the exercise of that jurisdiction free from embarrassments or conflicts with other courts arising from subsequent claims against the same property. Since a levy ordinarily embodies the elements of dominion and control of the property levied upon, such a levy upon property in custodia legis may seriously interfere with orderly administration by the primary tribunal. Accordingly the test of immunity of property in custodia legis may in general be said to be whether substantial confusion or embarrassment to the initial jurisdiction would result from the enforcement of process against the property by another tribunal."
No confusion or embarrassment would be attendant upon a levy made as here, and hence the property is not immune from but is rather subject to such a levy.
The second and third arguments of the United States of America concern themselves not only with the character of the property involved but concurrently with the manner in which a priority may be obtained by a judgment subsequent in date over a judgment prior in date of recovery.
*390 The priority which is accorded to a junior judgment over a senior judgment where a levy is made on realty results from R.S. 2:26-137. This statute, paraphrased, makes provision that the purchaser at a judgment execution sale shall obtain title free, clear and discharged from all other judgments and recognizances. The court, by analogy, determined that the mere issuance of execution and levy on real estate by a judgment creditor resulted in a priority for such judgment creditor over all other judgment creditors, regardless of the date of docketing, and that an actual sale thereunder was not requisite for such a result.
In Clement v. Kaighn, 15 N.J. Eq. 47 (Ch. 1862), the court said, at page 57:
"The statute, in terms, relates merely to the title which a purchaser by virtue of a sheriff's sale under an execution at law shall acquire. It declares that the purchaser under a sale by virtue of an execution issued upon a junior judgment shall hold the land clear of all judgments upon which no execution has been taken out and executed on said land. In effect that gives to the junior judgment, by virtue of which the land is sold, priority over the senior judgment upon which no execution hath been sued out and executed upon the land. But the design of the statute is to give to the plaintiff in the junior judgment upon which execution is first sued out `the proper effect and fruits thereof.' The operation of the statute cannot, therefore, be limited to the case of a sale under the junior judgment, where no execution hath been sued out upon the senior judgment and levied upon the land. For if that were so, it would enable the plaintiff in the prior judgment to sue out and levy his execution upon such judgment after the levy under the execution upon the junior judgment, and thus defeat the express object of the statute by preventing the plaintiff in the junior execution `from obtaining the effect and fruits thereof.' To give effect, therefore, to the statute, it is necessary to hold that the plaintiff in the junior judgment, by suing out and levying the first execution upon the land, acquires a priority of lien, which cannot be affected by any execution subsequently issued, nor by any mode in which the land may be sold. The issue of the execution upon the junior judgment and its delivery, duly recorded, to the sheriff, destroys the priority which was enjoyed by the older judgment, and transfers it to the junior judgment. It reverses the priority of the encumbrances, no matter in what mode the land may be sold. This, I think, must have been the result if there were no further provision upon the subject. But the statute further declares, that where sundry executions issue against the goods and lands of the same person, then the like priority and preference *391 shall be given as is given in writs of execution against goods only, viz., they shall bind the property from the time that the writ, duly recorded, shall be delivered to the sheriff. Nix. Dig. 248, sec. 3, 4; 722, sec. 3."
See also Riverside Building & Loan Assn. v. Bishop, 98 N.J. Eq. 508, 131 A. 78 (Ch. 1925); Swift & Co. v. First National Bank of Hightstown, 114 N.J. Eq. 417, 168 A. 827, (Ch. 1933); Lippincott v. Smith, 69 N.J. Eq. 787, 64 A. 141 (E. & A. 1905).
Under a proper state of facts, therefore, a levy upon realty under a judgment may, in and of itself, succeed in establishing a priority in lien thereof.
One of the elements required to make such a priority effective under R.S. 2:26-137 is that the property levied upon be realty.
The nature of such property here levied upon must therefore be determined.
In this State our courts, regarding more the essence than the form of a mortgage transaction, have laid down the principle that the mortgage does not vest in the mortgagee an immediate estate in the lands, with the right of immediate possession, defeasible upon the payment of the mortgage money, but merely gives him a right of entry on breach of the condition, in which event his estate has all the incidents of a common law title, including the right of possession subject to the equity of redemption, and, meanwhile, the mortgagor is treated as the owner of the lands for all purposes. In New Jersey, a mortgage is essentially security for the payment of the debt. Sears, Roebuck & Co. v. Camp, 124 N.J. Eq. 403, 1 A.2d 425 (E. & A. 1938); Farrow v. Ocean County Trust Co., 121 N.J.L. 344, 2 A.2d 352 (Sup. Ct. 1938); Riverside Building & Loan Assn. v. Bishop, 98 N.J. Eq. 508, 131 A. 78 (Ch. 1925). And so the mortgagor, until a default and action by the mortgagee, would continue to be regarded as the owner of the fee title.
Consistent with the foregoing, where execution is issued and levy made upon real estate prior to or during the *392 pendency of a foreclosure of a mortgage to which said real estate is subject, the judgment creditor so causing the levy to be made acquires a priority of lien over a judgment earlier recovered upon which no levy has been made. Riverside Building & Loan Assn. v. Bishop, 98 N.J. Eq. 508, 131 A. 78, (Ch. 1925); Clement v. Kaighn, 15 N.J. Eq. 47 (Ch. 1862); Lovejoy v. Lovejoy, 31 N.J. Eq. 55 (Ch. 1879); Bogert v. Lydecker, 45 N.J.L. 314 (Sup. Ct. 1883); Andrus v. Burke, 61 N.J. Eq. 297, 48 A. 228 (Ch. 1901).
Under the system now existing in this State, the right of the owner to redeem the realty, the subject of foreclosure, is not cut off for at least ten days after the sale by the sheriff if no objection to the sale is filed within that time. Chee v. Davenport, 2 N.J. Super. 532, 64 A.2d 902 (Ch. Div. 1949), affirmed, 4 N.J. Super. 518, 68 A.2d 284, (App. Div. 1949). And so it becomes patent that for the period of time preceding the termination of the right of redemption a judgment creditor had the right to levy on the real estate itself (the right of redemption of the judgment debtor) and obtain a preference.
In the matter sub judice, the right of the judgment debtor to redeem had been extinguished prior to the levy in question. We are, therefore, confronted with the question as to whether the surplus fund continued to retain its character as realty or was converted into personalty.
Generally, surplus funds resulting from a sale under a mortgage foreclosure of realty are deemed not to be converted into personalty but continue to maintain their classification as realty, insofar as the liens or the vested rights in the realty are concerned. Servis v. Dorn, 76 N.J. Eq. 241, 76 A. 246 (Ch. 1909); Morris v. Glaser, 106 N.J. Eq. 585, 151 A. 766 (Ch. 1930); affirmed, 110 N.J. Eq. 661, 160 A. 578 (E. & A. 1932); Zelley v. Zelley, 101 N.J. Eq. 37 136 A. 738 (Ch. 1927); Hackensack Trust Co. v. Tracy, 86 N.J. Eq. 301, 99 A. 846 (Ch. 1917); Hinchman v. Stiles, 9 N.J. Eq. 454 (Ch. 1853); Vreeland v. Jacobus, 19 N.J. Eq. 231 (Ch. 1868).
*393 In view, therefore, of the nature and character of a mortgagor's interest in the mortgaged realty, and the continued existence of the surplus fund realized upon a sale under foreclosure as realty insofar as liens or vested rights in the realty are concerned, it is here held that levy may be made upon such surplus under R.S. 2:26-137. This being so, the "right, title and interest" of the mortgagors in the fund is an interest in realty, and the Millville National Bank is entitled to a priority over the United States of America in the surplus. If, however, we concede, merely for the sake of argument and the purposes of this opinion, that the surplus monies are personalty, as is suggested by the United States of America, we must arrive at the same conclusion insofar as the question of priority is concerned.
It is to be noted that the levy was not only upon the "right, title and interest" of the mortgagors but upon the "rights and credits" as well.
The effect of a levy made in accordance with the statute is the same as if it had been made on personalty. In the case of personalty, the lien of a judgment becomes effective upon the making of a levy by the sheriff, but dates back to the delivery of the writ to him. R.S. 2:26-90 to R.S. 2:26-94; McAdams v. Mundy, 79 N.J.L. 480, 76 A. 1031 (E. & A. 1910); Fredd v. Darnell, supra; Walton v. Hillier, 128 N.J.L. 119, 24 A.2d 219 (E. & A. 1942).
Pursuant to the applicable statutes hereafter referred to, rights and credits may be levied upon as other goods and chattels. Moran v. Joyce, 124 N.J.L. 255, 11 A.2d 420, (Sup. Ct. 1940); Cohen v. Cohen, 126 N.J.L. 605, 20 A.2d 594 (Sup. Ct. 1941).
R.S. 2:26-168, the pertinent and applicable statute, provides as follows:
"As used in sections 2:26-169 to 2:26-181 of this title, `rights and credits' includes all rights and credits which may be taken by writ of attachment against nonresident debtors, and also rights and credits of an equitable nature, except such trust funds as are exempt by law; and nothing contained in said sections 2:26-169 to 2:26-181 shall be construed as impairing the rights of an execution creditor *394 under other provisions of this article or any law of this state relating to executions."
R.S. 2:26-169 provides as follows:
"Rights and credits shall be levied upon and taken as property is taken under writs of attachment against nonresident debtors."
R.S. 2:26-170 provides as follows:
"Rights and credits of a defendant in execution, or within his custody or control as a representative if he is sued in a representative capacity, may be levied upon, taken and sold or collected by virtue of such execution."
R.S. 2:26-171 provides as follows:
"Rights and credits levied upon shall not be sold without leave of the court or a judge thereof.
Sales of rights in real estate taken hereunder shall be made in the manner provided by law for judicial sales of real estate.
Sales of rights and credits in the nature of personal property shall be made in the manner provided by law for judicial sales of chattels."
The source of the above cited statutes is P.L. 1915, c. 115, p. 182.
The same rule that applies to the nature of property arising as surplus upon a foreclosure sale applies to monies arising from an Orphans' Court sale for the payment of debts and to a sale in an action for partition. Morris v. Glaser, 106 N.J. Eq. 585, 151 A. 766, (Ch. 1930), affirmed, 110 N.J. Eq. 661, 160 A. 578, (E. & A. 1932); Oberle v. Lerch, 18 N.J. Eq. 346 (Ch. 1867).
In Fredd v. Darnell, supra, the fund in custodia legis upon which a levy was made resulted from a sale in a partition action. The levy there was made in the following manner:
"On all the right, title and interest of the said Armitt F. Darnell (judgment debtor) of, in and to the proceeds of a certain sale of real estate made by Ernest Watts, special master in chancery, in a certain cause in chancery of New Jersey, between Beatrice D. *395 Fredd, et vir., complainants, and Armitt F. Darnell, et ux., et al., defendants, pursuant to an advertisement of said special master's sale which is attached hereto, and which described the real estate by metes and bounds, and which proceeds of sale are now in the hands of Ernest Watts, special master in chancery before referred to, which said interest of Armitt F. Darnell amounted to one thousand seventy-eight dollars and eighty-four cents ($1,078.84), as by a report of said special master in said cause will more fully and at large appear, reference being had thereto."
The court said, at page 254:
"As already disclosed the levy here in question was made on the `right, title and interest' of the judgment debtor in the fund in the hands of the special master. Since the present statute authorizes a levy on `rights and credits' of a judgment debtor in the manner in which property is attached under writs of attachment against nonresident debtors it seems clear that the levy here in question may be regarded as in the nature of an attachment of the interest of the judgment debtor in the fund then in the hands of the special master.
It is not herein overlooked that for most purposes the fund arising from the sale of land in partition suits, though in fact money, is regarded in equity as in the nature of real estate. But after the partition sale the title to the original real estate had been transmitted to the purchaser at the sale, and a co-tenant retained only a right to participate in the distribution of the fund; it is that right which has been levied upon, under authority of the act of 1915, in the manner in which property is attached under writs of attachment against nonresident debtors, and such levy in no way embarrasses the due administration of the fund through a decree of distribution in the partition suit, since the levy on the `right, title and interest' of the judgment debtor in the fund will now be given recognition as a valid levy and will establish the execution lien as of the date of the delivery of that execution to the sheriff."
The court did not there discuss the applicability of C.S., p. 4676, Rev. 1877, p. 1044 (the source of R.S. 2:26-137).
The similarity of the levy there to that in the instant case is noteworthy.
It is, therefore, held that by reason of the levy here made, in the light of either R.S. 2:26-137 or R.S. 2:26-168, et seq., the Millville National Bank is entitled to be first satisfied to the extent of its judgment from the surplus fund herein.
Judgment consistent with the foregoing will be entered