**Arthur GREENBERG, Jr., Plaintiff,**

**v.**

**Richard AWES, Defendant and Appellant,**

**and**

**Federal Land Bank of St. Paul, a corporation, Credit Management, Inc., also known as Credit Bureau of Greater Grand Forks, a corporation, Harry Holen, Rent-or-Buy, Inc., a corporation, Hospital Services, Inc., a corporation, the State of North Dakota, a political subdivision, and all persons unknown who have, or claim to have, any interest in the property described in these proceedings, Defendants,**

**and**

**Joan M. Awes, one of the persons unknown claiming an interest in the property described in the above proceeding, Defendant and Appellee.**

**Civ. No. 9311.**

Supreme Court of North Dakota.

July 28, 1977.

■■■■■■■■■■

---

1. In the Michigan case, the remarriage occurred eight days after judgment.

Pancratz, Wold, Johnson & Hill, Fargo, for defendant and appellant Richard Awes; argued by J. Philip Johnson, Fargo.

Nelson & Kalash, Grand Forks, for defendant and appellee, Joan M. Awes; argued by Dwight F. Kalash, Grand Forks.

ERICKSTAD, Chief Justice.

The error alleged in this appeal by Richard Awes is that the Traill County District Court, in an action for partition of real property, improperly ordered payment of $12,040 from the proceeds held for Awes, the defendant in the partition action, to Joan Awes, his former wife, and a judgment creditor who had not filed an answer to the complaint in the partition action.

An action was brought for partition of real property by Arthur Greenberg, Jr., against Richard Awes in November of 1975, with regard to certain farmland in Traill County, North Dakota, owned by Greenberg and Awes as tenants in common. A lis pendens was filed with the Traill County Register of Deeds on November 25, 1975. Proceedings were held pursuant to Chapter 32–16, N.D.C.C., and a judicial sale of the property was ordered to be held, with The First National Bank and Trust Company in Grand Forks being appointed referee for purposes of effecting the sale. Following the sale, a hearing for confirmation of the sale was held on June 14, 1976.

Counsel for Joan Awes appeared at that hearing and requested payment from the proceeds of the sale to satisfy a default judgment in her favor against Richard Awes. The sale was confirmed without any action being taken as to this claim, although other creditors were paid out of the proceeds, with $15,000 ordered held by the referee pending the resolution of Joan's claim.

Joan had obtained a default judgment against her former husband Richard Awes on June 4, 1971, in Isanti County, Minnesota. Pursuant to Chapter 28–20.1, N.D.C.C., an authenticated copy of that judgment was apparently filed in Burleigh County and copies transcribed to several counties in North Dakota. A copy of the Minnesota judgment was filed in Traill County on June 11, 1976, and notice of this filing was mailed by the clerk of court to the last address of Richard known to Joan. On June 17, 1976, following the order of the Traill County District Court that $15,000 of the proceeds of the sale be held by the referee (referred to by counsel as "receiver"), an execution was issued by the Burleigh County District Court commanding the sheriff of Grand Forks County to satisfy the judgment in the amount of $12,040.16.

Joan was ordered to appear before the Traill County District Court on July 26, 1976, to show cause why a request of Richard to set aside the levy of execution should not be granted. Following a hearing on that date, the district court ordered the referee to pay to the attorneys for Joan $12,040.16 out of the funds held. Richard appeals from this order.

These issues on appeal are set forth in Richard's brief:

"1. Was the claim of Joan Awes, not submitted by answer and raised after receiver's sale in the partition action, properly allowed?

"2. Was the execution levy against proceeds held by the receiver in the partition action valid?

"3. Was the execution based upon a Minnesota judgment valid on its face?"

▪ We believe that the answer is yes to each issue. The fact that the claim of Joan Awes was not submitted by answer in the partition action does not cause its defeat in this case. Her claim need not be treated as an interest in the real property as, from what appears on the record, a valid execution was issued enabling the remaining proceeds of the sale to be levied upon. It is not important to the resolution of this case that this money came into the hands of the court by way of a partition action.[1]

This leads us to the next issue, and involved in determining that issue is whether the doctrine of *custodia legis* precludes the levy of execution upon the proceeds held by the referee in this case. Richard argues that, as property in the hands of the referee is deemed to be in the hands of the court, it is in *custodia legis* (possession of the court), and may not be levied upon by the sheriff. He points out, as the basis for this doctrine, that to allow property in the hands of a court to be interfered with by an outside party could lead to a multitude of actions

---

1. The issue has not been raised in this appeal as to whether execution is a proper procedure to lay claim to property of a debtor in the hands of a third party. Without deciding that issue at this time, we note that some authorities deem it proper. *See McCoy v. Justice Court of Santa Ana Tp.,* 23 Cal.App.2d 99, 71 P.2d 1115 (1937); *Lauraine v. Masterson,* 193 S.W. 708 (Tex.Civ.App.1917); 30 Am.Jur.2d *Executions* § 105 (1967).

and cause confusion and delay in the legal process. We agree that this is a legitimate concern.

The circumstances in this particular case, however, indicate no such confusion or delay. The district court has willingly aided the claimant in this case.

This Court has held, in a case where a sheriff had been paid money for the redemption of property sold under mortgage foreclosure and had no further duty except to pay the money to the holder of the certificate of sale, that such money was subject to attachment. *Allen v. Larson,* 64 N.D. 727, 256 N.W. 178, 94 A.L.R. 1046 (1934). On a petition for rehearing in that case, Justice Burke, speaking for the entire Court, recognized that the reason for the doctrine of *custodia legis* is well founded, but concluded that the rule has no application when its reasons cease, and held the money to be subject to attachment. *Id.* at 256 N.W. 180.

Several New Jersey cases have held that the test of whether property in *custodia legis* is immune from execution and levy is whether substantial confusion or embarrassment of the court with primary jurisdiction over the property would result from enforcement of process against it by another court. *E.g. Naglieri v. Trabattoni,* 20 N.J.Super. 173, 89 A.2d 463 (1952); *Vineland Savings & Loan Ass'n. v. Felmey,* 12 N.J.Super. 384, 79 A.2d 714 (Ch.1950); *Bernstein v. New Jersey Bankers' Securities Co.,* 115 N.J.Eq. 347, 171 A. 145 (Ch. 1934).

In view of the holding of this Court in *Allen v. Larson,* we are consistent in applying the above test in the case before us. As the district court of Traill County was in the best position to determine whether substantial confusion or embarrassment would result from execution and levy upon the property in the hands of its referee, and must be deemed to have concluded by its order that there would be no confusion or embarrassment resulting therefrom, we hold the doctrine of *custodia legis* inapplicable to the circumstances of this case.

In the third issue before us, Richard claims that the form of the execution, as set forth in the following statute, has not been complied with.

"The writ of execution must be issued in the name of the state of North Dakota, attested in the name of the judge, sealed with the seal of the court and subscribed by the clerk, and directed to the sheriff, or to the coroner when the sheriff is a party or interested. It must refer intelligibly to the judgment, stating the court, the county where the judgment roll or transcript is filed, the names of the parties, the amount of the judgment, if it is for money, and the amount actually due thereon, and the time of docketing in the county to which the execution is issued, and shall require the officer substantially as follows:

1. If it is against the property of the judgment debtor, to satisfy the judgment with interest and accruing costs out of the personal property of such debtor, and if sufficient personal property cannot be found, out of the real property belonging to him on the day when the judgment was docketed in the county or at any time thereafter;

2. If it is against real or personal property in the hands of personal representatives, heirs, devisees, legatees, or tenants of real property or trustees, to satisfy the judgment out of such property; and

3. If it is for the delivery of the possession of real or personal property, to deliver the possession of the same, particularly describing it, to the party entitled thereto, and at the same time may require the officer to satisfy any costs, damages, or rents or profits recovered by the same judgment out of the personal property of the party against whom it was rendered, and the value of the property for which the judgment was recovered, to be specified therein, if a delivery thereof cannot be had, and if sufficient personal property cannot be found, then out of the real property belonging to him on

the day when the judgment was docketed or at any time thereafter, and in that respect shall be deemed an execution against property." § 28–21–06, N.D.C.C.

The execution reads as follows:

"The State of North Dakota to the Sheriff of the County of Grand Forks, North Dakota, GREETINGS:

"WHEREAS, Judgment was rendered on the 4th day of June A.D. One Thousand Nine Hundred and seventy-one in an action in the District Court of the County of Burleigh, North Dakota, between Joan M. Awes, Plaintiff against Richard S. Awes, Defendant, in favor of said plaintiff for the sum of Twelve thousand forty and 16 [sic] Dollars as appears by the Judgment Roll filed in the office of the Clerk of District Court for said County of Burleigh and which said Judgment was docketed in your County on the 17th day of June A.D., 1976 and the sum of $12,040.16 Dollars is now actually due and unpaid thereon, with interest from the 4th day of June A.D., 1971 and $7.00 Accrued Costs.

"THEREFORE, We command you that you satisfy the said Judgment, with interest and accruing costs out of the personal property of the said Judgment Debtor within your County, or if sufficient personal property cannot be found, then out of the real property of your county belonging to said Judgment Debtor, on the day when the said Judgment was so docketed in your County or at any time thereafter, in whosoever hands the same may be, and return this Execution within sixty days after its receipt by you to the Clerk of District Court of said Burleigh County.

"WITNESS THE HON. Henry C. Howard, Clerk of said District Court in and for said Isanti County, State of Minnesota, and my hand and the seal of said District Court, Bismarck, North Dakota, this 17th day of June, 1976.

"By   Candy Voegele   s/Thora Dennis
      THORA DENNIS,
      Clerk of District Court
      Burleigh County, North Dakota
(SEAL)      (4–1–76)"

The language in the execution which Richard claims defective is the following:

"  .  .  .   Judgment   .  .  .   rendered on the 4th day of June A.D. One Thousand Nine Hundred and seventy-one in an action in the District Court of the County of Burleigh, North Dakota  .  .  .

\*  \*  \*  \*  \*  \*

"WITNESS THE HON. Henry C. Howard, Clerk of said District Court in and for said Isanti County, State of Minnesota, and my hand and the seal of said District Court, Bismarck, North Dakota

.  .  .

"By   Candy Voegele   s/Thora Dennis
      THORA DENNIS
      Clerk of District Court
      Burleigh County, North Dakota
(SEAL)"

Richard claims that the defects are two-fold: (1) the execution is not attested by the judge and (2) the court description is patently unintelligible. Although the execution is not a model to be followed for its clarity, we believe that it sufficiently describes the judgment so as to properly apprise the debtor. Section 28–21–06, N.D.C.C., is in itself somewhat misleading when applied to a foreign judgment. We must recognize the clerk of court may not be a lawyer and may not always seek advice of counsel in issuing an execution. In this case, any confusion which the language of the execution may have created was dispelled by the Show Cause hearing. No one contends that the form of the execution misled anyone, including Richard. The contention is merely that it did not comply with the statute. Under the circumstances of this case, including the clarification resulting from the hearing on the Order to Show Cause, we conclude that the defects in the execution should not invalidate the district court's order.

For the reasons stated herein, the order appealed from is affirmed.

VOGEL, PEDERSON, PAULSON and SAND, JJ., concur.