**In re Richard T. BOBILIN, Debtor.**

**Theodore LISCINSKI, Jr.,
Trustee, Plaintiff,**

**v.**

**Richard T. BOBILIN, Charlotte D. Bobilin, Monmouth County National Bank, Red Bank, United Jersey Bank/Mid State, Bell Communications Research Inc., New Jersey National Bank and R.H. Mosier Realty Inc., Defendants.**

**Bankruptcy No. 86–07962.
Adv. No. 87–0626TW.**

United States Bankruptcy Court,
D. New Jersey.

March 11, 1988.

Robert A. Fagella, Zazzali, Zazzali & Kroll, Newark, N.J., for Richard and Charlotte Bobilin.

Monroe Weiss, Lambert & Weiss, Hawthorne, N.J., for Federal Ins. Co.

Theodore Liscinski, Lanfrit, Liscinski & Rosenwasser, Somerset, N.J., for Trustee.

## MEMORANDUM OPINION AND ORDER

STEPHEN A. STRIPP, Bankruptcy Judge.

In this adversary proceeding the plaintiff trustee seeks a determination of the validity and extent of liens against real property co-owned by the debtor and his wife, and authorization to sell the property free and clear of liens and interests pursuant to Sections 363(f) and (h) of Title 11, United States Code ("Bankruptcy Code" or "Code").

The third count of the complaint seeks to avoid the lien of defendant Bell Communications Research, Inc. ("Bell") pursuant to Bankruptcy Code § 544(a)(2). Bell filed an answer asserting affirmative defenses including failure to state a cause of action against Bell. The trustee has moved under Bankruptcy Rule 7056 for summary judgment on the third count of the complaint only, seeking to avoid Bell's lien. This shall constitute the Court's decision on that motion.

The following facts are undisputed. Defendants Richard T. Bobilin, the debtor, and Charlotte D. Bobilin, his wife, (collectively "the Bobilins") own real property known as 50 Kemp Avenue, Fair Haven, Monmouth County, New Jersey, more particularly described as Lot 7, Block 56 on the Fair Haven tax assessment map (hereinafter "the Kemp Avenue property").[1] The Bobilins acquired that property, which is their residence, by a deed recorded on January 25, 1971.

On December 26, 1985 Bell filed a verified complaint against the debtor in the Superior Court of New Jersey alleging that the debtor, an employee of Bell, had embezzled $401,800 from Bell. On the same day Bell obtained an order temporarily restraining the debtor from transferring any assets and directing issuance of a writ of attachment against all of the debtor's real and personal property. On December 27, 1985 a writ of attachment was issued. On December 30, 1985 the Monmouth County Sheriff executed the writ by levying on three of the debtor's bank accounts and the Kemp Avenue property. It is Bell's lien on

---

1. The trustee alleges that the Bobilins own the Kemp Avenue property as tenants in common, while the Bobilins allege that they are tenants by the entirety. However, that issue is not material for purposes of this motion, since the Court's decision on this motion would be the same regardless of the nature of the Bobilins' ownership interests in the property.

the Kemp Avenue property which is the subject of this adversary proceeding.

On January 13, 1986 Bell obtained a partial final judgment by consent against the debtor in the amount of $401,800. The amount of the judgment was subject to increase in such additional amount as Bell's continuing investigation might reveal to be due from the debtor. The judgment continued the restraints against the transfer of any property by the debtor, pending further order of the Superior Court.

On January 17, 1986 Bell deposed the debtor. A review of the transcript of that deposition reveals that the debtor testified regarding his personal and real property, and the expenditure of the funds embezzled from Bell. The personal property about which the debtor testified apparently did not have a value approaching the amount of Bell's judgment.[2] The only real property owned by the debtor is his interest in the Kemp Avenue property.

On February 25, 1986 Bell obtained a writ of execution from the Superior Court. The writ was delivered to the sheriff on March 6, 1986 with instructions to levy on the Kemp Avenue property. The sheriff levied on that property on March 21, 1986. However, there has been no sale of the property.

The debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on December 28, 1986. The plaintiff was appointed as trustee.

Bell has assigned all of its rights in connection with this matter to Federal Insurance Company ("Federal").

The trustee's motion for summary judgment is based on the following two arguments. First, since Bell failed to levy on the debtor's personal property before levying on the real property, the levy is void under N.J.S.A. 2A:17–1 and *Raniere v. I & M Investment, Inc.*, 159 N.J.Super. 329, 387 A.2d 1254 (Ch.Div.1978), aff'd., 172 N.J.Super. 206, 411 A.2d 719 (App.Div. 1980), cert. den., 84 N.J. 473, 420 A.2d 1298 (1980). Second, if the levy is void, then the trustee can avoid Bell's judgment lien on the property under Bankruptcy Code § 544[3] and *Matter of Blease*, 605 F.2d 97 (3rd Cir.1979).

Federal's brief in opposition to the trustee's motion for summary judgment argues that Bell complied with the requirements of *Raniere* before levying on the Kemp Avenue property under the writ of execution, and that the levy is therefore valid as against the trustee. The debtor's brief in opposition makes the same argument, and adds the additional argument that a levy under a writ of attachment creates a lien that is superior to the interest of the trustee under Code § 544(a)(2). The legal issue raised by the latter argument is this: under applicable New Jersey law, does a judgment creditor who levies on the debtor's real property under a writ of execution (which is the trustee's status under Code

---

2. The debtor ascribed the following values to the personal property about which he testified:

| | |
|---|---|
| Cash: | $17,000 (transcript, page 9) |
| AT & T stock: | value not given (transcript, page 12) |
| Motor vehicles: | equity not estimated (transcript, pages 13 and 14) |
| Bank accounts: | $2,000 (transcript, pages 14 through 16) |
| Jewelry: | $2,000 (transcript, pages 16 and 17) |
| Bell savings account | $8,000 to $12,000 (transcript, pages 19 and 20) |
| Bell savings plan | $4,000 (transcript, page 20) |
| Credit union savings plan: | $500 (transcript, page 20) |

Additionally, the debtor's testimony indicates that his wife has an interest in some or all of such property.

3. The trustee's complaint and motion asserts that his cause of action is under Code § 544(b), which gives the trustee the rights of actual unsecured creditors to avoid transfers under applicable law. However, the trustee does not mention any such actual creditor. The Court therefore assumes for purposes of this motion that the trustee's intention is to assert a cause of action under Code § 544(a)(2), which gives the trustee the rights of a hypothetical creditor with an execution against the debtor that is returned unsatisfied, whether or not such a creditor exists. By referring in their moving and opposing papers to the trustee's rights as hypothetical lien creditor, all parties appear to have effectively treated the trustee's cause of action as being under Code § 544(a)(2). Further, the trustee's brief refers to Code §§ 544(a) and (b).

§ 544(a)(2) and *Blease* ) take priority over a creditor who has previously levied on the same property under a prejudgment writ of attachment? There are no cases applying New Jersey law which are precisely on point.[4] Moreover, research reveals no case precisely on point involving analogous provisions in other jurisdictions.

## I

N.J.S.A. 2A:17–39 provides that the purchaser at a judgment execution sale obtains title free and clear of all other judgments and recognizances:

Whereas, other judgments, and recognizances, besides those, or some of those, by virtue whereof of the sale aforesaid was made, might affect the real estate so sold, if no provision be made to remedy the same, and whereas, the persons who have not taken, or will not take out executions upon their judgments, or recognizances, ought not to hinder or prevent such as do take out executions from having the proper effect and fruits thereof, therefore, in any such case, the purchaser, his heirs and assigns, shall hold the land, tenements, hereditaments and real estate by him or her purchased as aforesaid, free and clear of all other judgments and recognizances, whatsoever, on or by virtue of which no execution has been taken out and executed on the real estate so purchased.

It has been held as a corollary that a levy on real estate under a writ of execution gives a junior judgment creditor priority over senior judgment creditors who have not levied. *Clement v. Kaighn*, 15 N.J.Eq. 47, 57 (Ch. 1862); *Vineland Savings & Loan Assn. v. Felmey*, 12 N.J.Super. 384, 390, 79 A.2d 714 (Ch.Div.1950). It was this rule of New Jersey law which formed the basis of the Third Circuit's holding in *Blease, supra,* that as a hypothetical execution creditor, a bankruptcy trustee takes

priority over, and therefore can avoid, the liens of nonlevying judgment creditors.

However, it has also been noted that It is clear from the language of [N.J.S.A. 2A:17–39] and the judicial interpretation of it over many years that its provisions were intended to apply only to priority inter se among those holding liens by judgment or recognizance and that it has no effect in the determination of priority of lien holders other than those mentioned.

*In re Fornabai,* 227 F.Supp. 928, 931 (D.N.J.1964). Thus a threshold issue is whether Bell's lien is a "judgment" or "recognizance" within the meaning of N.J.S.A. 2A:17–39. If it is neither, then it is not avoidable by the trustee under *Blease* and Code § 544(a)(2).

## II

Attachment is a prejudgment proceeding to obtain jurisdiction over property of a debtor. Note, "Attachment in New Jersey," 11 Rutgers L.Rev. 714 (1957). It is "an extraordinary remedy *in rem* for the collection of an ordinary debt by seizure of the property of the debtor." *Russell v. Fred G. Pohl Co.,* 7 N.J. 32, 39, 80 A.2d 191 (1951). In New Jersey, attachment is governed by N.J.S.A. 2A:26–1 *et seq.* The grounds for issuance of a writ of attachment are set forth in N.J.S.A. 2A:26–2. Essentially, a plaintiff can obtain a writ of attachment where the facts would entitle the plaintiff to an order of arrest of the defendant before judgment in a civil action, or where the defendant cannot be served in this state. *See Britton v. Howard Sav. Bank,* 727 F.2d 315 (3rd Cir.1984). Attachment must be distinguished from execution. Attachment is strictly a prejudgment procedure for the seizure of property, and execution is the means provided by law for enforcing a judgment. Note, "Attachment in New Jersey," *supra* at 714.

From the time of its issuance, an attachment is a lien on all of the defendant's real estate in this state. N.J.S.A. 2A:26–9. It

---

**4.** In *Rova Farms, Inc. v. Gordon,* 130 N.J.L. 85, 31 A.2d 790 (E. & A. 1943), it was held that an attachment takes priority over a subsequent order for sale of property of an insolvent decedent. However, the facts and analysis are so sparse in that case that this Court declines to hold that it is dispositive of the issues in this case.

continues as a lien until the plaintiff's claim is satisfied, the attachment is discharged, or judgment is given against the plaintiff. *Id.* Any conveyance or transfer of the attached real estate is void as against the plaintiff unless the attachment has been released. N.J.S.A. 2A:26–10. A judgment for the plaintiff in the action is a lien on all of the defendants' real estate whether acquired before or after the judgment. N.J.S.A. 2A:26–11. A sheriff's sale of the attached property under an execution issued on a judgment in the attachment action conveys all title which the defendant had at the time the attachment became a lien on the property, or which was thereafter acquired by the defendant. N.J.S.A. 2A:26–15.

As previously noted, Bell obtained a judgment in the attachment action. The preliminary legal issue is whether such judgment is a "judgment" or "recognizance" within the meaning of N.J.S.A. 2A:17–39, which provides that a judgment creditor who levies takes priority over all prior judgments and recognizances on which there was no prior execution.

A recognizance has been defined as "an obligation entered into before a court or magistrate duly authorized for that purpose whereby the recognizor acknowledges that he will do some act required by law which is specified therein." *State v. Vinal,* 113 R.I. 426, 325 A.2d 81 (1974). N.J.S.A. 2A:15–46 provides for the filing of recognizances of bail, which would appear to be the most common form of recognizance. In any event, there is nothing in the nature of an attachment or a judgment thereon which suggests that such a lien would be a "recognizance" within the meaning of N.J.S.A. 2A:17–39.

The question of whether Bell's judgment in its attachment action is a "judgment" within the meaning of N.J.S.A. 2A:17–39 is more difficult. There are no cases precisely on point.

However, the case of *J.T. Evans Co. v. Fanelli,* 59 N.J.Super. 19, 157 A.2d 36 (Law Div.1959), is instructive. That case was an action for a declaratory judgment to determine the priority between a me-

chanic's lien judgment creditor and the holder of title under a judicial sale held in execution of a general judgment. The pertinent facts were that the plaintiff J.T. Evans Co. ("Evans") filed a mechanic's notice of intention against the subject property under the Mechanic's Lien Act, N.J.S.A. 2A:44–64 *et seq.;* filed a mechanic's lien claim; and subsequently obtained a judgment in the lien claim proceedings. Thereafter, the defendants obtained a general judgment against the property owners, obtained a writ of execution, levied on the subject property, and conducted a sheriff's sale. Evans had not obtained a writ of execution on its mechanic's lien judgment before the defendants obtained their writ of execution and levied on the property.

The court determined that Evans' mechanic's lien claim had merged into its judgment. *Id.* at 24, 157 A.2d 36. In considering whether a sale under a general judgment extinguishes a mechanic's lien reduced to judgment, the court noted that N.J.S.A. 2A:44–110 provides that a sale in execution of a judgment on a mechanic's lien conveys such title as the owner had in the land at the commencement of the building. The court held:

> If the Legislature intended that "all other judgments and recognizances, whatsoever," as found in N.J.S. 2A:17–39, include mechanic lien judgments, there would be no necessity for N.J.S. 2A:44–110, because priority of liens is determined by the date as of which they attach to the property involved. *Majewski v. Greenberg,* 101 N.J.Eq. 134 [136 A. 749] (Ch. 1927); and under N.J.S.A. 2A:17–39, executions against real estate have priority according to the time of their delivery duly recorded by the sheriff irrespective of the dates of the judgments. *McAdams v. Mundy,* 79 N.J.L. 480 [76 A. 1031] (E. & A. 1910). *The Legislature must therefore have intended that although by the judgment the original cause of action is extinguished and a new cause of action is created, advantages to which the plaintiff was entitled with respect to the original cause of action may not be destroyed by*

*the judgment. Thus, if a creditor has a lien upon the property of the debtor and obtains a judgment against him, he does not thereby lose the benefit of the lien.... The court determines that an execution on plaintiff's judgment after defendant's sale relates back over defendant's rights....*

*Id.* at 25–26, 157 A.2d 36 [emphasis added].

■ The law applicable in this case requires a similar result. Under N.J.S.A. 2A:17–13, priority as between writs of execution on general judgments is determined by date and time of delivery to the sheriff. However, a sale under a writ of execution in an attachment action *relates back to the issuance of the writ of attachment,* and conveys such title as the defendant had when the writ of attachment was issued. N.J.S.A. 2A:26–15. Thus a writ of execution on a judgment in an attachment action takes priority over an earlier writ of execution issued on a general judgment, if the writ of attachment was issued before the entry of the general judgment. A judgment in an attachment action is therefore a statutory exception to the general rule in N.J.S.A. 2A:17–39 that a junior judgment creditor who executes takes priority over holders of senior judgments who have not yet executed.

This construction also gives effect to the statutory purpose of an attachment as a prejudgment security device. N.J.S.A. 2A:26–9; Note, "Attachment in New Jersey," *supra,* at pp. 714, 722 and 723; 6 Am.Jur.2d *Attachment and Garnishment* § 454 at 877; *see also In re McNeely,* 51 B.R. 816, 818 (Bankr.D.Utah 1985). Once the sheriff has levied on the property under the writ of attachment, the property is *in custodia legis.* The lien thereby created

"is as substantial and enduring as a mortgage or a pledge." 6 Am.Jur.2d *Attachment and Garnishment, supra.*

### III

■ In the instant case, the writ of attachment preceded the filing of the bankruptcy petition (which is the date on which the trustee becomes a hypothetical judgment creditor who has levied under Code § 544(a)(2)). Thus, N.J.S.A. 2A:17–39 and *Blease* do not give the trustee a cause of action under Code § 544(a)(2) in this case.[5] It is therefore irrelevant that Bell levied on the debtor's real property under its writ of execution before levying on his personal property, which sequence violates N.J.S.A. 2A:17–1 and *Raniere, supra,* in the case of executions on general judgments. For the reasons previously stated, an execution on a judgment in an attachment action is not an execution under N.J.S.A. 2A:17–1. It is an execution under N.J.S.A. 2A:26–15, which does not require the sale of attached personalty before the sale of attached realty.[6]

### IV

In summary, a judgment in an attachment action is not a "judgment" within the meaning of N.J.S.A. 2A:17–39, under which a junior judgment creditor who executes takes priority over holders of senior judgments who have not yet executed. The trustee therefore has no cause of action under *Blease* and Code § 544(a)(2) to avoid the attachment judgment, because N.J.S.A. 2A:17–39, on which *Blease* was based, does not apply to attachment judgments.

Execution of a judgment in an attachment action is controlled by N.J.S.A. 2A:26–15, not by N.J.S.A. 2A:17–1. The

**5.** Of course, if the writ of attachment had been issued within ninety days of the bankruptcy petition, or within one year if Bell were an insider, the attachment lien could be a preference under Code § 547(b). *See* 4 Collier on Bankruptcy § 547.12[1] at 547–548 (15th ed. 1985). However, in this case the writ of attachment was issued on December 27, 1985, and the debtor's bankruptcy petition was filed on December 28, 1986. The attachment is therefore not assailable as a preference.

**6.** The debtor and Federal argue that Bell had complied with N.J.S.A. 2A:17–1 and *Raniere.* Were those authorities controlling in this case, the Court would be constrained to find that Bell had not complied with them. Its execution would be void, as Bell did not execute on the debtor's personal property and obtain a writ of *nulla bona* before executing on the real property, as required by *Raniere. See also Matter of Silverman,* 6 B.R. 991, 995 (D.N.J.1980); *In re Italiano,* 66 B.R. 468, 473 (Bkrtcy.D.N.J.1986).

requirement of the latter statute and *Raniere* that a general judgment creditor execute on personalty before realty is not applicable in attachment cases.

It is therefore ORDERED that the trustee's motion for summary judgment is denied, and the third count of the complaint is dismissed for failure to state a cause of action.